In re Alexander E. WOLFINGTON t/a Wolfington Interest, Debtor.

Daniel E. GOLDBERG and Aileen Goldberg, Plaintiffs,

v.

Alexander E. WOLFINGTON t/a Wolfington Interest, Defendant.

Bankruptcy No. 82–03464K.
Adv. No. 83–1898K.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 21, 1985.

Shelley V. Sodomsky, Philadelphia, Pa., for plaintiffs.

Edward J. DiDonato, Philadelphia, Pa., for trustee.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

A complaint to determine the dischargeability of a debt is before the Court for decision. The plaintiff alleges that the debt in issue arose from the debtor's defalcation of funds while acting in a fiduciary capacity; therefore, the debt is nondischargeable pursuant to section 523(a)(4) of the Bankruptcy Code ("Code").

The facts are uncomplicated.[1] In October, 1981, Daniel E. Goldberg and Aileen Goldberg, ("plaintiffs"), engaged Alexander Wolfington ("debtor") to find a buyer for their residence located at 303 St. Peters Way, Philadelphia, Pennsylvania. The debtor found a buyer and an agreement of sale was executed in October, 1981. The buyer made a downpayment of $39,000.00[2] on the property, which was given to the debtor to hold in escrow until settlement, when it was to be turned over to the plaintiffs.[3]

Final settlement occurred on June 2, 1982. The debtor appeared at settlement and was able to produce only $6,000.00 of the deposit monies. He was unable to account for the remainder of the deposit monies, totalling $33,000.00.

Although the debtor was entitled to receive a $9,000.00 commission from the sale of the property, the $9,000.00 was applied toward the $33,000.00 in missing monies, leaving a balance owed to the plaintiffs of $24,000.00. Settlement concluded with the plaintiffs having assumed a loss of $24,-000.00.

On July 21, 1982, the plaintiffs received an additional payment of $11,000.00 from a trust fund on behalf of the debtor, thereby reducing the amount of the indebtedness to $13,000.00.

The debtor acknowledged his indebtedness to the plaintiffs in the amount of $13,000.00 by letter dated July 22, 1982. In the letter, the debtor admits that the debt arose from his unauthorized use of funds which were to be held by him in a fiduciary capacity. Since the language of the letter is particularly relevant to the issue at bench, we quote verbatim from that letter:

Dear Daniel & Aileen:

This letter will confirm my personal debt to you in the amount of $13,000. This amount represents the balance of the deposit money received by me in escrow as agent for the sale of 303 St. Peter's Way, Philadelphia, Pennsylvania. The total amount of $39,000 was to have been produced at settlement. At settlement, the sum of $6,000 was produced. My commission was to have been $9,000. This left a balance of $24,000. You have recently received an additional payment of $11,000 on my behalf. Accordingly, the remaining balance is $13,000. This debt arises out of my unauthorized use

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Bankruptcy Rules.

2. A Settlement Sheet dated April 1, 1982 shows that a deposit was paid by the purchaser in the amount of $36,500.00. It also shows that, as of

April 1, 1982, the interest accumulated on the deposit was $2,937.90. *See* Plaintiffs' Exhibit 3.

3. Testimony of plaintiff, Daniel E. Goldberg; N.T. p. 10.

of funds to have been held by me in a fiduciary capacity. I am today giving to you my Note for the balance due.

As partial payment for the balance due, I agree to arrange for you to lease a new automobile in the price range of approximately $11,000. I will arrange to be solely obligated for any lease payments and for the cost of automobile insurance, including collision and liability insurance. The amount of my payments will be credited against my obligation to you.

To the extent that my payments do not reduce the debt and interest to zero, I will remain obligated for the balance.

Very truly yours,

Alexander E. Wolfington

Plaintiffs' Exhibit 1.

The debtor also executed a Note in the plaintiffs' favor in the amount of $13,-000.00 plus interest, on July 22, 1982. *See* Plaintiff's Exhibit 2. On the same day, the debtor filed a petition for relief under Chapter 7 of the Code. The debtor did not include the debt owed to the plaintiffs in his bankruptcy schedules because, according to his statement at trial, he did not intend to have the debt discharged. Nevertheless, the plaintiffs received notice of the Chapter 7 filing from the Clerk of the Bankruptcy Court.

On July 15, 1983, the plaintiffs filed a complaint to determine dischargeability pursuant to 11 U.S.C. § 523(a)(4), requesting judgment against the debtor in the amount of $13,000.00 plus interest. The complaint was amended on July 25, 1983. The debtor filed a response *pro se* to the amended complaint on September 20, 1983. Trial was held on September 22, 1983, at which the debtor appeared *pro se*. After the completion of the trial, the plaintiffs, through counsel, and the debtor, acting *pro se*, submitted proposed findings of fact, conclusions of law and memoranda of law in support of their positions.

Section 523(a)(4) of the Code provides:

A discharge under section 772 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

11 U.S.C. § 523(a)(4).

In order to prevail in a dischargeability action under section 523(a)(4), a plaintiff must prove two (2) facts: (1) that the debt arose while the debtor was acting in a fiduciary capacity and (2) that the debt was incurred by fraud, defalcation, embezzlement, or misappropriation. *See Aetna Insurance Co. v. Byrd* (In re Byrd), 15 B.R. 154, 155 (Bankr.E.D.Va.1981).

It is well settled that there is no necessity to show any intentional wrongdoing by a debtor in order to establish that a debt was created by defalcation. *Id.* at 156. Defalcation includes the failure of a fiduciary to account for money he received in his fiduciary capacity. It is sufficient if the misrepresentation is due to negligence or ignorance. It is irrelevant that the default by the fiduciary was innocent. *Id.* Moreover, it is clear that the word "defalcation" is a more encompassing term than "embezzlement" or "misappropriation". *Jasel Building Products Corp. v. Polidoro* (In re Polidoro), 12 B.R. 867, 868 (Bankr.E.D.N.Y.1981) *citing Central Hanover Bank and Trust Co. v. Herbst,* 93 F.2d 510 (2nd Cir.1937).

The Court in *Central Hanover* stated that:

When a fiduciary takes money upon a conditional authority which may be revoked and knows at the time that it may, he is guilty of a defalcation though it may not be a fraud, or an embezzlement, or perhaps not even a misappropriation.

93 F.2d at 512.

In another case under the Code, *Miller v. Mullican (In re Mullican),* 24 B.R. 161 (Bankr.E.D.Pa.1982), the creditor gave the debtor $5,300.00 to hold for her for "safekeeping". The debtor promised to return it to her on demand. When requested to

return the funds, the debtor was able to produce only $800.00 of the $5,300.00, having spent the remainder of the money on his own living expenses. The Court found that the funds given to the debtor were to be held by him in trust, and that by failing to return all of the creditor's money, he had committed a defalcation while acting in a fiduciary capacity. Therefore, the debt was declared non-dischargeable under § 523(a)(4) of the Code.

In the case at bench, it is clear that the debtor was acting as an agent for the plaintiffs when he agreed to find a buyer for their residence. The conduct which gave rise to the non-dischargeable debt was the debtor's unauthorized use of the buyer's deposit money which was to have been held by him in escrow for the plaintiffs until settlement on the property. A letter to the plaintiffs, wherein the debtor admits that he used the funds without authorization and that he was acting in a fiduciary capacity at the time, was accepted into evidence at the trial as Plaintiffs' Exhibit 1.

Despite these admissions in the letter of July 22, 1982, the debtor attempted at trial to prove that he was not acting in a fiduciary capacity with respect to the sale of the plaintiffs' property when the defalcation of deposit monies occurred. He testified that the deposit money was given to an entity known as the Wolfington Corporation and that the corporation was escrow agent for the funds. Also, the debtor testified that he was not a licensed real estate broker or even a licensed sales person when the transaction took place. Rather, he contends, he was strictly a shareholder of the corporation, which became defunct at the end of 1981, and that the broker of record for the corporation was an individual by the name of Thomas Guillamo.

Apparently, the debtor is attempting to escape liability for his actions by arguing that he was not a fiduciary in the technical sense, because he was not a licensed broker or salesperson. This argument must be rejected for obvious reasons. First, it contradicts his statement in the July 22, 1982 letter that the debt arose out of his unau-thorized use of funds which were to have been held by him in a fiduciary capacity. Second, he held himself out to be a real estate agent when the plaintiffs contacted him to sell their house and the purchaser's deposit money was entrusted to him. The plaintiffs dealt only with the debtor. There has been no evidence presented that anyone other than the debtor was responsible for the unauthorized use of the funds.

The Court of Appeals stated in *Hamby v. St. Paul Mercury Indemnity Co.*, 217 F.2d 78 (4th Cir.1954):

The term fiduciary is derived from the civil law. It connotes the idea of trust or confidence. The relation arises whenever the property of one person is placed in charge of another ...

Real estate agents occupy a fiduciary relation to their clients, and so long as that relation continues the agent is under a legal obligation, as well as a high moral duty, to give to his principal loyal service ...

Certainly there can be no question as to the existence of a fiduciary capacity in a case where the agent has been entrusted with money to be used for a specific purpose. To hold otherwise, we think, would be to narrow unreasonably the broad language used by Congress in denying discharge where there has been misappropriation by a bankrupt while acting 'in any fiduciary capacity' ...

Not all agents act in a fiduciary capacity; but, certainly, an agent is acting in such capacity where he is handling funds which have been entrusted to him to be applied to a specific purpose ...

The purpose of the Bankruptcy Act is to grant a discharge of honest debts to honest debtors, not to grant discharges to those who have dishonestly misappropriated funds entrusted to them. (citations omitted).

*Id.* at 80, 81.

There can be no doubt in this case that the deposit monies were entrusted to the debtor for a specific purpose, creating a fiduciary relationship between the debtor and the plaintiffs. By the debtor's own

admission in his letter to the plaintiffs, he accepted the money in a fiduciary capacity and misappropriated it. Moreover, the debtor cannot now be relieved of liability for this debt through discharge in bankruptcy because he subsequently executed a judgment note in favor of the plaintiffs. *See Greenberg v. Schools,* 21 B.R. 1011 (S.D.Fla.1982) *aff'd* 711 F.2d 152 (11th Cir. 1983); *Firemen's Fund Insurance Co. v. Covino,* (In re Covino), 12 B.R. 876 (Bankr. M.D.Fla.1981); *Hartford Accident & Indemnity Co. v. Flanagan,* 28 F.Supp. 415 (S.D.Ohio 1939).

In *Greenberg,* the parties had entered into an agreement in full settlement of a civil action involving the bankrupt's fraud, misappropriation and misuse of corporate funds. The debtor defaulted on the settlement agreement and subsequently filed a petition in bankruptcy seeking to discharge the debt owed. The debtor urged the appellate court to accept the Bankruptcy Court's finding that once the parties entered into a good faith settlement agreement, that agreement effectively extinguished the underlying action for fraud and limited any future relief solely to the enforcement of the settlement agreement. Accordingly, the debtor argued, the debt should be declared dischargeable. The Court rejected the debtor's argument stating:

> The interpretation urged by the appellee would allow a debtor to discharge a debt incurred by his own fraud by simply entering into a settlement agreement prior to declaring bankruptcy. The debtor could even accept a substantially adverse settlement with the knowledge that its terms and conditions would be nullified by the subsequent petition in bankruptcy. Neither the statute, nor its legislative history, nor cases construing the reach of the statute, support this position.

21 B.R. at 1013.

In conclusion, we find that the debt owed to the plaintiffs is non-dischargeable under section 523(a)(4) of the Code and judgment will be entered for the plaintiffs in the amount of $13,000.00 plus interest.