In re Valerie LANE, Debtor.

Thomas MORIBONDO, Plaintiff,

v.

Valerie LANE, Defendant.

Bankruptcy No. 84–01115K.
Adv. No. 84–0847K.

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 24, 1987.

David J. Picker, Norristown, Pa., for debtor/defendant.

Thomas Moribondo, West Chester, Pa., James J. Marlowe, II, Downingtown, Pa., for plaintiff.

William Schaps, Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The matter before us exemplifies the rocky road of affairs of the heart. The Plaintiff, Thomas Moribondo, Esquire (hereinafter referred to as "the Plaintiff"), filed an Adversary proceeding in which he objects to the dischargeability of an alleged debt of approximately $15,900.00, which is disputed by the Defendant-Debtor, Valerie Lane (hereinafter referred to as "the Debtor"), based upon 11 U.S.C. § 523(a)(2), (4), and (6). We hold that this case turns on the question of credibility, and that the Plaintiff has failed to carry his burden, and perforce we find that there is no debt owing from the Debtor to the Plaintiff.[1]

The Debtor has filed a counterclaim for attorneys' fees and costs, apparently based upon 11 U.S.C. § 523(d). We shall direct the parties to attempt to resolve the matter of fees and suggest reference to *In re Woods*, 69 B.R. 999 (Bankr.E.D.Pa.1987), for guidance. We strongly encourage the parties to come to an agreement respecting a modest award of attorneys' fees, as it

---

1. We add that had we been persuaded that a debt existed, we were not persuaded that the Plaintiff had met his burden such that the debt should be held non-dischargeable.

appears to us that the Debtor herein is in perhaps a stronger position than the Debtor in *Woods*. Therefore, we would regret any prolonged expenditure of time or energy on a matter which hopefully will now be laid to rest. In the event that the parties are unable to resolve this matter, we shall direct that any Motion for attorneys' fees and costs be filed by September 25, 1987.

A trial was conducted on July 16, 1987.[2] On July 17, 1987, an Order was entered affording the parties an opportunity to file proposed findings of fact, and conclusions of law, along with supplemental briefs by July 31, 1987.

Upon consideration of the pleadings, briefs, and the trial testimony, we make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. The Plaintiff, Thomas Moribondo, is an attorney who was admitted to practice law in Pennsylvania in 1979 and who has been so employed since 1979.

2. The Plaintiff and the Defendant/Debtor, Valerie Lane, met each other in September, 1979, when the Plaintiff worked as an attorney in a suite of law offices in which the Debtor was then employed as a receptionist.

3. The Plaintiff and the Debtor became friendly, and their relationship progressed beyond dating to include sexual relations.

4. The parties saw each other frequently and took three vacations together—to California in August, 1980; to St. Martin in November, 1980; and to St. Kitts in January, 1982. The parties cared for each other and had discussions about living together.

5. Within the period of time that the parties were intimately involved, there was at least some period of time that the parties were seeing each other exclusively.

6. In January of 1981, the parties agreed to jointly place funds into one six-month Certificate of Deposit (hereinafter referred to as "C.D. # 1") at Beneficial Savings Bank, so as to maximize the return of interest on these funds. C.D. # 1 was issued in the amount of $14,446.48, $4,000.00 of which was contributed by the Debtor. The balance of the funds was contributed by the Plaintiff. However, C.D. # 1 was issued only in the name of the Plaintiff. Interest was to be shared in proportion to their respective funds in C.D. # 1. The Debtor requested and obtained a promissory note for the $4,000.00 from the Plaintiff at the time of the purchase of C.D. # 1.

7. On July 10, 1981, the maturity date of C.D. # 1, the Plaintiff and the Debtor went together to Beneficial Savings Bank and met with Donna Russo, a customer services representative of the Bank.

8. There is no dispute that, on July 10, 1981, another Certificate of Deposit (hereinafter referred to as "C.D. # 2"), was issued, this time in the name of the Debtor only and in the amount of $17,164.14. However, the intent and circumstances under which C.D. # 2 was issued are in dispute.

9. Ms. Russo of Beneficial Savings Bank testified that she recalled the transaction of July 10, 1981, because it was unusual for a customer, the Plaintiff herein, to transfer or give all the funds in his name from C.D. # 1 to another person, the Debtor herein. Ms. Russo's unequivocal testimony was that the Plaintiff was definite in his statement that he was making a gift of the monies to the Debtor and that he un-

---

**2.** Although the within proceeding was filed on August 13, 1984, this matter was continued generally by request of the Plaintiff and no activity took place in this proceeding until May, 1986, when this Court prompted action by issuing a standing Order which directed that, unless a certification of reason why a case should remain open was filed within ten days, any adversary case in which there had been no docket entry for four months or more would be dismissed and closed. A filing was made by the Plaintiff, the timeliness of which was in dispute. We entered an Order on October 29, 1986, allowing the quick briefing of that issue. We consequently entered an Order on November 14, 1986, holding that the Plaintiff's filing was timely, directing that this matter not be dismissed and directing that this matter be tried on November 25, 1986. Thereafter, trial was continued by agreement of the parties three times before coming to trial.

derstood what he was doing. She was also positive that he used the word "gift." Ms. Russo repeatedly questioned the Plaintiff because the Bank viewed the Plaintiff as its customer and believed that the Bank had a duty to inform him of the effect such a transfer would have, i.e., that the money would no longer be his. Ms. Russo also testified that due to the nature of this transaction, her supervisor was also involved in approving this transfer. Ms. Russo has had no relationship or contact with either party except for the dispute herein, nor has she had contact respecting accounts with the Bank in her capacity as an employee. We find Ms. Russo's testimony to be objective and credible.

10. Ms. Russo also testified that her interaction was solely with the Plaintiff, while the Debtor passively awaited the outcome. When the transaction was completed, Ms. Russo handed C.D. # 2, in the name of the Debtor only, to the Plaintiff, who in turn handed it to the Debtor who placed it in her purse.

11. The Plaintiff testified that he never intended to make a gift of any of the funds to the Debtor but that the same arrangement which existed for C.D. # 1 was to continue in C.D. # 2, as well as in hereinafter described C.D. # 3, except that the funds were now titled in the Debtor's name to minimize income tax liability. However, no writing of any kind was made to memorialize this arrangement. He further testified that he did not recall Ms. Russo and that he never used the word "gift."

12. The Debtor testified that the Plaintiff had made a gift of his share of the monies in C.D. # 1 to her in purchasing C.D. # 2 and, later, C.D. # 3. The Debtor testified that the Plaintiff first announced his intention to make such a gift on the Memorial Day weekend preceding July 10, 1981. She testified that the gift was unexpected, and that it arose in the context of a discussion between the parties as to the future of their relationship.

13. In January, 1982, just after having returned from their third vacation together, to St. Kitts, the parties once again went together to Beneficial Savings Bank on the date of maturation of C.D. # 2. The Plaintiff gave the Debtor additional monies and the Debtor took out a Certificate of Deposit (heretofore and hereinafter referred to as "C.D. # 3") in the amount of $21,200.00 in her name alone.

14. The Plaintiff contends that $15,-900.00 of the funds comprising C.D. # 3 are his funds, while only $5,300.00 belongs to the Debtor. He also testified that he kept possession of the original Certificates of Deposit for both C.D. # 2 and 3 as an explanation as to why the Debtor needed a replacement certificate for C.D. # 3.

15. Both parties agree that from March, 1982, their relationship deteriorated, except that the Plaintiff contends that the parties didn't see much of each other after their return from St. Kitts in early January, 1982, whereas the Debtor contends that they saw each other frequently in January, less in February, and only once in March, 1982.

16. The Debtor testified that she kept possession of C.D.'s # 2 and 3 since they belonged to her. She further testified that after her relationship with the Plaintiff deteriorated, she checked the drawer and discovered that C.D. # 3 was missing. She further testified that the Plaintiff had known where she kept C.D. # 3 and had ample opportunity to remove it.

17. The Debtor subsequently obtained a replacement certificate for C.D. # 3 in May, 1982, which she ultimately withdrew from the Bank upon its maturation.

18. Between October, 1981, and July, 1982, the Debtor was unemployed. Upon maturation of C.D. # 3, she withdrew all of the funds and went to visit her family in California, returning to the Philadelphia area in the fall of 1982.

19. Each party's "story" is almost equally credible, and equally plausible. However, we find the Plaintiff has failed to show by a preponderance of the evidence that the monies were not a gift but instead were intended to be an investment. We base our determination on both the law of gifts and the fact that the Plaintiff produced no evidence which countervailed the per-

suasive and unbiased testimony of Ms. Russo.

20. We did not find the testimony of either of the Plaintiff's witnesses, Terry Marlowe, Esquire, or the Plaintiff's spouse, to be of any significant weight. The Plaintiff's spouse was obviously biased in the sense of her relationship to the Plaintiff; and Mr. Marlowe's testimony had little relevance to the matter in dispute.

## CONCLUSIONS OF LAW

1. All right, title and interest in the Certificates of Deposit issued by Beneficial Savings Bank on July 10, 1981, in the amount of $17,164.14 and on January 12, 1982, in the amount of $21,200.00 to the Debtor belonged solely to her.

2. The transfers of funds by the Plaintiff to the Debtor, which enabled her to obtain the aforesaid Certificates of Deposit, were voluntary, and constituted gifts of those funds.

3. The Plaintiff failed to demonstrate by a preponderance of the evidence that the transfer of funds from him to the Debtor were not gifts. Hence, no debt was owed by the Debtor to the Plaintiff which could be held dischargeable or nondischargeable.

4. In the alternative, even assuming that the Court was persuaded that no gift was made, the Plaintiff would have demonstrated only a breach of an oral agreement. The Plaintiff has not proven fraud pursuant to § 523(a)(2) by clear and convincing evidence, nor has he proven the elements of § 523(a)(4) or (a)(6) by a preponderance of the evidence.

## DISCUSSION

■ Clearly, the path of romance is not always smooth. Here we are faced with two inconsistent versions of what transpired in a romantic relationship rendered by each of the ex-lovers. Were the funds a gift and the instant attempt to have the alleged debt declared non-dischargeable merely an attempt to renege by a disenchanted ex-lover? Or were the funds an investment as is asserted by the Plaintiff which the Debtor has refused to return because *she* is the ex-lover scorned? Although the parties were almost equally credible, we are compelled to find in favor of the Debtor for several reasons. First of all, the Plaintiff has the burden of proving his objection to discharge, Bankruptcy Rule (hereinafter referred to as "B.Rule") 4005, and the Plaintiff simply has not met the burden of establishing that a debt existed rather than a gift. There were three witnesses on this issue, the Plaintiff, the Debtor, and Ms. Russo. Clearly, Ms. Russo carried the day for the Debtor.

Secondly, the Plaintiff has little in the way of corroborative evidence to support his assertion. He introduced handwritten computations allegedly made in an effort to determine proportionate shares of interest earned, but these computations were admittedly only in his handwriting and the Debtor denied any knowledge of or familiarity with them. Moreover, the Plaintiff, a licensed and practicing attorney, did not have any writing to evidence such an agreement to jointly invest funds ... no promissory note, nothing at all. Interestingly enough, the Debtor had the good sense to obtain such a promissory note from the Plaintiff when C.D. # 1 was issued in the Plaintiff's name alone.

Moreover, under Pennsylvania "gift" law, the "essential elements which constitute a valid gift are the intention of the donor to make a gift, actual or constructive delivery, and its acceptance by the donee: ..." *Kelly v. Huplits*, 103 Pa.Super. 430, 432, 157 A. 704, 704 (1931). *See also In re Drewett*, 34 B.R. 316 (Bankr.E.D.Pa.1983). The *Kelly* case is very helpful by analogy because there the donor's actions created a gift despite her express intent of a different underlying purpose, just as here the Plaintiff's actions have also created a gift despite his present protestations to the contrary.

In the *Kelly* case, a woman, fearing death from childbirth and being on poor terms with her husband, withdrew funds from her bank account and executed a certificate of deposit in her brother's name for the purpose of payment of her funeral ex-

penses, and support of her prospective child. She informed her brother of her plan but kept the certificate. She died a short time later. In the court's analysis of the question of whether there was an executed gift, the court stated that "[t]he transfer of the account into the certificate was the vital element in this transaction. It showed the executed purpose to give. The certificate spoke for itself; it asserted on its face that the [brother] was the owner of the deposited money." 103 Pa.Super. at 432, 157 A. at 704. The *Kelly* court found the elements of a gift established.

The parallel of the facts in *Kelly* to the facts *sub judice* are obvious. The Plaintiff herein converted funds which were in his name to the Debtor's name. The Certificate spoke for itself and was only in the Debtor's name. Applying the law of gifts, the creation of the certificates of deposit in the Debtor's name alone would be sufficient to establish a gift.

In *Cohen v. Tonkin*, 358 Pa. 422, 57 A.2d 840, (1948), the Supreme Court of Pennsylvania held that the appellee who had transferred real property by deed to his mother-in-law in order to reduce his income tax liability had made a gift of the property to her notwithstanding his motive to save tax liability. The Pennsylvania Supreme Court found sufficient evidence for the lower court's determination that the transaction was a gift. We similarly have found herein that a gift was made by the Plaintiff to the Debtor; there is strong support for this in Ms. Russo's testimony. The Plaintiff's story of his desire to reduce his tax liability is well met by the Pennsylvania Supreme Court's conclusion that it is not material

"that the motive for the transfer was the reduction of tax liability if in fact the gift was effected." 358 Pa. at 425, 57 A.2d at 842. We hold that a gift was effected by the placement of funds into certificates in only the Debtor's name.[3] Hence, even if the facts were not supportive of the Debtor's contention that the monies were a gift, i.e., if we disbelieved Ms. Russo's testimony, we would be compelled to find that a gift was made as a matter of law.

Lastly, the Plaintiff asks us to consider whether it is reasonable to accept the premise that a fledgling attorney, earning $350.00 gross per week, would give the bulk of his savings—somewhere between $10,000.00 and $16,000.00—to the Debtor, his paramour at the time. We are not persuaded that the reasonableness or unreasonableness of the Plaintiff's actions is the appropriate standard to apply in considering whether the Plaintiff has met his burden. Moreover, it is unfortunately all too true that people in love relationships do not always act rationally. The Debtor's premise that the Plaintiff gave monies to her, unsolicited, as an expression of his feelings for her based upon their relationship and based upon discussions as to their future because of her need to move forward in their relationship or to end the relationship is credible.

In any event, we would add that even had we found that the Plaintiff had established a debt because no gift had been made, and that the Debtor had breached an oral agreement to return funds placed jointly into Certificates of Deposit in the Debtor's name, we would still be compelled to find such a debt dischargeable.

---

**3.** In its post-trial Brief, the Plaintiff cites to *Chadrow v. Kellman*, 378 Pa. 237, 106 A.2d 594 (1954), to support his statement that both an intention to make a gift and such actual or constructive delivery at the same time to the donee so as to divest the donor of all dominion over the subject and invest the donee therewith is needed to constitute a gift under Pennsylvania law. Plaintiff's post-trial Brief at 19. We note that to the extent that the Plaintiff correctly identified the legal holding of that case, it supports our determination in the case under consideration because the Plaintiff herein divested himself of possession and control of the disputed funds at the time they were placed into the Certificates of Deposit issued only in the Debtor's name. The aforementioned legal definition of a gift arises in the context of what constitutes a valid inter vivos gift vis-a-vis a "gift mortis causa;" the applicability of said legal definition to the case at hand is questionable.

Moreover, we must add that we find *Chadrow* to be inapposite to our analysis because it is so factually distinct from the case herein. *Chadrow* involved the issue as to whether a valid joint tenancy agreement respecting a safe deposit box constituted a valid inter vivos gift of the contents where the decedent had retained both keys to the box and where the niece had never had access to the box.

■ In his Complaint, the Plaintiff asserted § 523(a)(2),[4] (a)(4), and (a)(6) as the basis for his objections to dischargeability, which provide that a debtor shall not be discharged from any debt:

(2) for money, property, services, ... to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, ...

.    .    .    .    .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

.    .    .    .    .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

In his post-trial Brief, the Plaintiff identifies as central to his position, the issues of "whether Debtor was acting in a fiduciary capacity pursuant to § 523(a)(4) or committed a willful and malicious injury within the meaning of § 523(a)(6)." In view of our initial determination that no debt exists, we will very briefly address these two issues as an alternative basis for dismissing the Complaint.

■ Contrary to the Plaintiff's assertion, there is simply no fiduciary relationship such as is required to invoke application of § 523(a)(4). Collier states:

The qualification that the debtor be acting in a fiduciary capacity has consistently, since its appearance in the Act of 1841, been limited in its application to what may be described as technical or express trusts, and not to trusts *ex maleficio* that may be imposed because of the very act of wrongdoing out of which the contested debt arose. There is no reason to believe that section 523(a)(4) will be construed otherwise. 3 COLLIER ON BANKRUPTCY, ¶ 523.14 at 523-93 (15th ed. 1987) (citations omitted).

The term "fiduciary" as used in § 523(a)(4) "has a much narrower meaning than in its generally-accepted use.' *In re Kwiat*, 62 B.R. 818, 821 (Bankr.D.Mass.1986). Furthermore, the term "fiduciary capacity" specifically does not apply to constructive trusts implied by law from contracts, 3 COLLIER ON BANKRUPTCY, *supra*, at 523-95, which is, at best, the most that can be said of the Plaintiff's position herein.

Additionally, "the fiduciary relationship must have existed previous to or independent of the particular transaction from which the debt arises." *Id.* at 523-97; *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). Again, this is not the situation herein.

Given the weight of authority which gives "fiduciary" a narrow meaning, we must decline to follow the reasoning employed by our predecessor, the Honorable William A. King, Jr., who utilized the broader general usage or definition of fiduciary in two different adversarial proceedings entitled *In re Wolfington*, reported at 48 B.R. 920 (Bankr.E.D.Pa.1985), and 47 B.R. 762 (Bankr.E.D.Pa.1985). Moreover, the two *Wolfington* cases are distinguishable from the case herein inasmuch as they concern escrow monies obtained for the purchase of real property, a well-accepted example of a fiduciary relationship.

We must also decline to follow the rationale employed by former Chief Judge Emil F. Goldhaber in *In re Mullican*, 24 B.R. 161 (Bankr.E.D.Pa.1982). We note that the *Mullican* case conspicuously omits any discussion of the applicable definition of "fidu-

4. Apparently the Plaintiff has appropriately abandoned § 523(a)(2) as a basis for denial of dischargeability, as no mention is made of it in his supplemental post-trial brief which was filed on July 31, 1987. Section 523(a)(2) is simply inapposite since in no way have facts been asserted, much less proven, that the monies were obtained by the Debtor under false pretenses, false representation, or actual fraud. The Plaintiff himself asserts that the monies were jointly placed into certificates at his suggestion. There is not a scintilla of evidence offered by the Plaintiff that the Debtor *never* had any intention of returning funds to him. The Plaintiff has not carried his burden of a preponderance of evidence, much less having met the requisite standard of clear and convincing evidence to prove fraud under § 523(a)(2). *In re Fitzgerald*, 73 B.R. 923, 926 (Bankr.E.D.Pa.1987); *In re Woods*, 66 B.R. 984, 988 (Bankr.E.D.Pa.1986); and *In re Woerner*, 66 B.R. 964, 976 (Bankr.E.D.Pa.1986), *aff'd*, C.A. No. 86-7324 (E.D.Pa., Order filed April 28, 1987).

ciary" under § 523(a)(4), and merely concludes that it was violated and holds the debt to be nondischargeable. We cannot concur in the reasoning regarding the applicability of § 523(a)(4) in *Mullican.*

The Plaintiff also contends that a conversion of his funds took place and that the conversion falls within the ambit of "willful and malicious injury," which is excepted from discharge pursuant to § 523(a)(6). While it appears to be true that § 523(a)(6) includes a willful and malicious conversion as opposed to a technical or negligent conversion, *Davis v. Aetna, supra;* 3 COLLIER ON BANKRUPTCY, *supra,* ¶ 523.16 at 523–118 to 119, we certainly do not agree that a conversion took place here. Again, assuming that there was no gift, the Plaintiff voluntarily placed his funds into the name and title of the Debtor. In the most favorable light to the Plaintiff, what occurred here was a breach by the Debtor of an oral agreement to return the Plaintiff's monies with accumulated interest. Insofar as Colliers states that "§ 523(a)(6) relates to torts and not to contracts" *id.* at 523–111, we fail to see the applicability of § 523(a)(6) to the case *sub judice.*

We observe that the interpretation of the terms "willful and malicious" is critical to a determination of dischargeability. Courts have been divided as to whether the statute requires an act with intent to cause injury, *In re Finnie,* 10 B.R. 262, 264 (Bankr.D.Mass.1981); *In re Hinkle,* 9 B.R. 283, 286 (Bankr.D.Md.1981); *In re Graham,* 7 BR. 5, 7 (Bankr.D.Nev.1980); and *In re Hodges,* 4 B.R. 513, 516 (Bankr.D.Va.1980); or whether the statute encompasses an intentional act which results in injury, a much broader standard. *Perkins v. Scharffe,* 817 F.2d 392, 394 (6th Cir.1987); *In re Cecchini,* 780 F.2d 1440, 1443 (9th Cir. 1986); *In re Franklin,* 726 F.2d 606, 610 (10th Cir.1984); and *Matter of Quezada,* 718 F.2d 121, 123 (5th Cir.1983).

We will briefly comment that, although the weight of the authority favors the broader application of § 523(a)(6), insofar as four courts of appeal have adopted such a standard, as compared to the numerous bankruptcy courts which have adopted the narrower standard, we are not persuaded. We believe that the proper analysis of § 523(a) in its entirety, as well as consideration of the purposes behind enactment of the Code, requires a narrow construction of § 523(a)(6). The legislative history of § 523(a)(6) is absolutely clear that this section was intended to specifically overrule *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), which applied a broader standard of "reckless disregard." It appears to this Court that the aforementioned circuit courts are continuing to apply the overruled, less strict "reckless disregard" standard under the guise of whether an intentional act caused injury.

Thus, we do not believe that the Plaintiff stated a cause of action under § 523(a)(6) even if we were disinclined to find that he had made a gift to the Debtor. An appropriate Order is attached.