John C. Marbach, J.
Plaintiffs in this representative action move for summary judgment in an action to enforce a statutory trust under article 3-A of the Lien Law in which damages for breach of trust are sought.
Plaintiffs entered into separate contracts for purchase of real property under development located in Valley Cottage, Town of Clarkstown, with HES Construction Corp.(HES) as owner. HES agreed to sell the property, designated as Lots 7 and 8, with houses to be erected thereon, in consideration for which the plaintiff Schwadron paid $3,822 to HES on Lot 7 and plaintiff Wolpin paid $3,552 to HES on Lot 8. Each plaintiff has had $1,000 of their advances, which were held separately in escrow deposits by third parties, returned to them and their claim has been reduced accordingly.
The defendants are alleged to be officers, directors and stockholders of HES. Plaintiffs claim that defendants “ participated ” in a diversion of these advances which were to be held subject to a trust under section 71-a of the Lien Láw for the “ cost of improvements ” on Lots 7 and 8. In addition, plaintiffs allege a failure to maintain proper books and records with respect to each trust as required by section 75 of the Lien Law. Although the corporate trustee to whom the moneys were paid, HES, is not a named party to the action, no objection on this point has been raised, nor would it prevent consideration of the relief requested, because section 77 (subd. 3, par. [a], subpar. [i]) of the Lien Law provides that damages for breach of trust ‘ ‘ or participation therein ’ ’ may be granted in an action to enforce a trust.
Plaintiffs’ advances were made on February 12, 1969. The work on the improvements on Lots 7 and 8 is alleged to have commenced in June, 1969, a fact not controverted by defendants. The improvements were never completed by HES. The properties were subsequently sold on January 21, 1971, under mortgage foreclosure.
At the outset, it is appropriate to refer to the general commentary of the Law Revision Commission (1964 Report of N. Y. Law Rev. Comm., pp. 221-222; N. Y. Legis. Doc., 1964 No. 65 I, pp. 6-7). There the commission noted the need for enacting present section 71-a to protect the vendee where advances are made but no improvements are ever started or where improvements are begun but abandoned. In such situations, the rem *344 edies available to the vendee were often illusory. Protection was sought for the vendee under section 71-a of the Lien Law by making him a trust beneficiary entitled to all of the rights under article 3-A afforded to other beneficiaries although his claim would be subordinate to other trust beneficiaries. Plaintiffs, in their present circumstances, were intended to be protected by section 71-a (Glazer v. Alison Homes Corp., 62 Misc 2d 1017).
Attached to the moving papers are extracts from the general ledger maintained by HES for the period February 1 to June 30, 1969, showing the general ledger balance as of February 28, 1969, and that as of June 30, 1969, as well as the “ Cash Disbursements ”, “ Cash In”, “Deposits on Account” and “ Wages ” during the intervening period.
Section 75 of the Lien Law requires every trustee to keep books or records with respect to each trust and specifies the entries that must be made for each trust with respect to trust assets receivable, trust accounts payable, trust funds received and trust payments made.
The general ledger extracts maintained by HES show that moneys received by HES from all contract vendees were commingled in one account. There were no separate records showing the entries required under subdivision 3 of section 75 of the Lien Law. In fact, in respect to ‘ ‘ trust payments made with trust assets ” (Lien Law, § 75, subd. 3, par. D.), there is no information relating payments to specific trusts nor identifying payments as a payment for a trust purpose. All that is shown in the cash disbursements account is the payee and whether the payment was charged to “Withholding Taxes”, “ Wages ”, “ Construction Costs ” or “ General ”. Defendants have not come forward on this motion with any additional records to cure the deficiency in the records. Copies of 12 corporate checks are attached to defendants’ answering affidavits. However, only three of these checks bear notations that could possibly be construed as attempted compliance with requirements of section 75 of the Lien Law, and even then the strict mandate of the section is not met. A trustee’s failure to keep the required records is presumptive evidence that the trustee had diverted or consented to a diversion of the trust funds (Lien Law, § 75, subd. 4; Frontier Excavating v. Sovereign Constr., Co., 30 A D 2d 487, 490; Utica Sheet Metal Corp. v. Schecter Corp., 53 Misc 2d 284).
Moreover, on the papers before me, there is evidence of actual diversion. The records show that the balance on account with *345 HES as of February 28, 1969, was $7,942.65, which moneys included the $7,442.36 received from plaintiffs. However, as of June 30, 1969, the balance was only $488.02. Although the work on Lots 7 and 8 commenced sometime in June, 1969, defendants have produced no evidence to establish that plaintiffs’ advances were spent on improvements and exhausted during the period June 1 to June 30.
Furthermore, there are various expenditures recorded during this February-June period which are unrelated to any cost of improvements. There were expenditures from the commingled funds for corporate administrative purposes and salaries. The “ cost of improvements ”, as defined in subdivision 2 of section 71 of the Lien Law, does not include corporate administrative expenses or officer salaries (Naiztat Iron Works v. Tri-Neck Constr. Corp., 62 Misc 2d 228), attorney’s fees (Glazer v. Alison Somes Corp., 62 Misc 2d 1017, supra), or union benefits not related to work subject to the contract out of which the trust arises (National Sur. Corp. v. Fishkill Nat. Bank, 61 Misc 2d 579, affd. 37 A D 2d 537).
Defendants contend that, regardless of the diminished balance on the books as of June 30, 1969, payments were subsequently made for improvements on plaintiffs’ lots which exceed the amount of plaintiffs’ advances. To support this contention, defendants rely on the 12 checks mentioned above. Three of these bear notations relating to the payment to materialmen, contractors or suppliers to Lot 7, the remainder either having no notation or one not capable of identification with any particular piece of property. Also, as to these checks related to Lot 7, their amount is less than plaintiff Schwadron’s advance even after the $1,000 escrow deposit returned is deducted.
In effect, defendants’ position is that these alleged subsequent expenditures for cost of improvements on plaintiffs’ property constitute a restoration extinguishing plaintiffs’ trust interests and curing any technical diversion. Defendants’ reliance on this defense is erroneous.
Under prior law, a definition of a diversion of trust assets did not exist independently of the definition of what constituted larceny (1959 Report of N. Y. Law Rev. Comm., p. 240; N. Y. Legis. Doc., 1959, No. 65F, p. 56). Consequently, it was held that where restoration was made under prior law there would be no larceny and thus no diversion that could he attacked in a civil action (Raymond Concrete Pile Co. v. Federation Bank & Trust Co., 288 N. Y. 452; Gramatan-Sullivan, Inc. v. Koslow, 240 F. 2d 523, 527 [C. A. 2d]). The offense was in the con *346 junctive, i.e., there had to he both a failure to pay the permitted claims (Blanc, N. Y. Law of Mechanics Liens, 1949, § 108a, p. 624).
The Law Revision Commission recognized the lack of civil liability under the 1942 law where the owner-trustee made eventual payment of the cost of improvement (1959 Report of N. Y. Law Rev. Comm., supra, pp. 220, 239-240). It proposed a separate section under article 3-A of the Lien Law in which a diversion would be defined which recommendation was adopted and became law as present section 72 of the Lien Law. The commission’s intent to divorce the diversion and larceny concepts merged in prior law is clear. The resulting status of the “ restoration ” theory as curing a technical diversion in a civil action was left uncertain as there was no specific reference in the new provisions to the effect of restoration apart from the penal provisions for larceny, which now are found in section 79-a of the Lien Law, and from the provisions in section 73 of the Lien Law dealing with notice of lending and transferees.
Subsequently, the Court of Appeals in Aquilino v. United States of Amer. (10 N Y 2d 271), on remand from the United States Supreme Court (363 U. S. 509), held that the Legislature in enacting the 1942 Lien Law provisions intended to adopt the rule that the funds of an express trust may not be diverted to nontrust purposes, whether or not claims of beneficiaries are outstanding and whether or not the diversion is subsequently remedied, although the wording of the law adopted in 1942 was not as clear as it could be (Aquilino v. United States of Amer., supra, p. 279).
Consequently, there is no basis to presume that the legislative intent embodied in the present statutes is any different from that under prior law, especially in view of the Law Revision Commission’s express desire to negate the effect of the Gramatan-Sullivan v. Koslow holding (1959 Report of N. Y. Law Rev. Comm., supra, p. 220). In this context, establishment of a diversion is facilitated and plaintiffs, the beneficiaries, make out a prima facie right to recover upon proof that a diversion occurred.
Cases involving a transferee of trust assets must be distinguished. In such situations, the defense of restoration has long been recognized in New York (1959 Report of N. Y. Law Rev. Comm., supra, p. 244). It is in accord with recognized principles of trust law (Restatement Trusts 2d, § 291, subd. [3]) and is now found explicitly available to the trustee and *347 transferee under section 73 of the Lien Law. Thus, in cases such as Travelers Ind. Co. v. Central Trust Co. of Rochester (47 Misc 2d 849, 853, affd. without opn. 27 A D 2d 803) the lower court’s observation as to present article 3-A of the Lien Law that ‘ ‘ if the defendant proves these defenses [referring to replacement of diverted funds], its punishment for the infraction will be the expense of this lawsuit and not liability to the plaintiff, which will have lost nothing by reason of the alleged improper financial dealings ”, is limited to the transferee-lender type situation. (See, also, United Lakeland Air Conditioning Co. v. Ahneman-Christiansen, Inc., 33 Misc 2d 606, affd. 18 A D 2d 1022, affirming on the ground that the transferee-bank’s use of trust funds for costs of the improvement did not constitute a diversion.)
Having determined that a breach of trust by diversion of trust assets created under section 71-a of the Lien Law has been proven, the trustee is chargeable with any loss in value of the trust estate resulting from the breach of trust (Restatement, Trusts 2d, § 205; 3 Scott, Law of Trusts [3d ed.], §§ 205, 206).
As to the question of loss, plaintiffs’ interests under section 71-a of the Lien Law in its advances are subordinated to unpaid trust claims as defined in paragraph (a) of subdivision 3 of section 71 of the Lien Law. However, if any portion of the advances is not subject to the predominant beneficiaries’ claims, the seller-trustee will not be permitted to dispose of the advances free of the plaintiffs’ claim as a trust beneficiary until the seller has performed his contract or there is a breach of contract by the plaintiff, or until the vendor has otherwise been released or discharged (1964 Report of N. T. Law Rev. Comm., sufra, p. 222).
Furthermore, plaintiffs’ interests in their advances are not extinguished by a mere showing of payment to those prior beneficiaries. If other trust assets for the improvement are received by the trustee, the payments made by the trustee are deemed to have been made first from such other trust assets (Lien Law § 71-a, subd. 2, par. [b]).
In this mandated representative action (Lien Law, § 71, subd. 3, par. [b]), plaintiffs’ rights under the statute are certain and the loss is established by proof of a diversion even though these particular plaintiffs’ right to share in any fund cannot be determined until the existence or nonexistence of unpaid trust beneficiaries is subsequently ascertained.
*348 These same provisions and concepts embodied in section 71-a of the Lien Law facilitate a demonstration of the causal connection between the breach of trust and loss. The advances subject to trust cannot be reached by the owner-trustee’s creditors (Aquilino v. United States of Amer., 10 N Y 2d 271, supra) other than protected beneficiaries. Therefore, but for a diversion, the original fund or balance should be available to the vendee-beneficiary. This is not a situation where defendants could argue that some loss would have occurred if actually there had not been a breach of trust and attempt to escape liability (3 Scott, Law of Trusts [3d ed.], § 205.1). On the contrary, a Lien Law trust fund diversion is the type of breach noted in Scott (id. at 1763), where the trustee should be charged because the breach of trust is of such a character that it is necessary to impose absolute liability on the trustee in order to deter other trustees from committing similar breaches (cf. President and Directors of Manhattan Co. v. Kelby, 147 F. 2d 465 [C. A. 2d], cert. den. 324 U. S. 866).
The remaining issue is the liability of officers, directors and stockholders of the corporate trustee for breach of trust. The officers and directors of a corporate trustee are under a duty to the beneficiaries of a trust administered by the corporation not to cause the corporation to misappropriate trust property. Any person who knowingly causes misappropriation of trust property by a corporation is personally liable for participation in a breach of trust (4 Scott, Law of Trusts [3d ed.], § 326.3; Wechsler v. Bowman, 285 N. Y. 284); Santa Barbara v. Avallone & Miele, 270 N. Y. 1, 6); Anderson v. Daley, 38 App. Div. 505, 511). Also, the officers and directors certainly have a duty not to convert trust property to their own use (4 Scott, supra).
The inquiry is whether any of the defendants were actively “ participating ” in the wrong of the corporation or had knowledge of use of trust moneys in the corporate business (Santa Barbara v. Avallone & Miele, supra, p. 6). It is not essential that the misuse of the trust funds should be for the exclusive benefit of the person making such unlawful use, although benefit to the corporation is inseparable from the benefit to those financially interested in the corporation (Anderson v. Daley, supra, pp. 512-513). Furthermore, to find “participation”, the individual need not be an officer, director or stockholder (Aetna Cas. & Sur. Co. v. Lafayette Nat. Bank, 35 A D 2d 137; Anderson v. Daley, supra, p. 512).
*349 The evidence as to defendant Geller is that he, as president of HES, received $2,000 in wages from HES during the February to June, 1969, period when the commingled account was drawn down to a balance of $488.02. From the 12 checks attached by defendant Geller to his affidavit it was apparently the practice for Geller to sign corporate checks. Significantly, three of these 12 checks were drawn and paid during the February to June, 1969, period. Defendant Geller does not deny having knowledge of the receipt of these advances from plaintiffs and the nature of their intended use. On these facts, participation in the misuse of corporate trust funds is evidenced. The answering affidavit of defendant Geller fails to raise a substantial fact question which would defeat a motion under CPLR 3212 (Utica Sheet Metal Corp. v. Schecter Corp., 47 Misc 2d 290, mod. 25 A D 2d 928).
However, as to defendants Levy and Freund, the evidence is not conclusive on the issue of “participation”. Defendant Levy denies having personally received or withdrawn any moneys from HES. The general ledger sheets do not contain entries to the contrary. The sole factors implicating defendant Levy to any extent are the checks payable to various contractors, materialmen and suppliers referred to above, 6 of which were cosigned by Levy, 3 of those 6 having been drawn and paid in the February to June, 1969, period. It would not be appropriate to infer knowledge of misuse of trust assets from this evidence alone (Santa Barbara v. Avallone & Miele, 270 N. Y. 1, 6-7). The papers before me are barren of any facts upon which defendant Freund’s “ participation ”, if any, in the corporate misuse could be measured. Certainly, as to these defendants, there is a material fact issue on the question of “ participation ” in the corporation diversion of trust fund assets that precludes an award of summary judgment. Plaintiffs’ case in respect to these two defendants is not bolstered by any presumption, for the presumption created by virtue of subdivision 4 of section 75 of the Lien Law runs only as against the trustee and arises only as to the existence of a diversion rather than knowing participation on the part of officers or directors.
Accordingly, summary judgment is granted as against defendant Geller and denied as to defendants Levy and Freund.