In the Matter of Anthony R. POLIDORO, Debtor.

JASEL BUILDING PRODUCTS CORP., Plaintiff,

v.

Anthony R. POLIDORO, Defendant.

Bankruptcy No. 880–05461–17.
Adv. No. 880–1036–17.

United States Bankruptcy Court,
E. D. New York.

July 23, 1981.

Joseph Rubin, Smithtown, N. Y., for plaintiff.

Sale, Groothius & Seligman by Harold Seligman, Bay Shore, N. Y., for defendant.

## DECISION

BORIS RADOYEVICH, Bankruptcy Judge.

The Court is called upon to declare the debt of Anthony Polidoro (the "debtor") to the Jasel Building Products Corp. ("creditor") nondischargeable under section 523(a)(4) of the Bankruptcy Code. It is alleged that the debtor is an officer, director, and shareholder of Dorolum Siding Corp. (the "corporation"), a contracting company which had purchased aluminum siding products from the creditor on open account; that the corporation used these materials to improve various parcels of real property; that the owners of the real property had paid the corporation for these improvements; and, that the corporation had used the owners' funds for other business purposes without paying the creditor. Based upon the foregoing, the creditor contends that this debt arose because of the debtor's defalcation while acting in a fiduciary capacity within the meaning of Code section 523(a)(4), and that it is nondischargeable in bankruptcy. While conceding that his corporation is liable for breach of

its trust, the debtor argues that he did not also stand in a fiduciary relationship with the plaintiff and that his debt should be discharged. For reasons which follow, this Court agrees with the plaintiff.

### Findings of Fact

1. On September 12, 1980 the debtor filed a voluntary petition under chapter 7 of the Bankruptcy Reform Act of 1978.

2. The debtor and Richard Paravante were the sole shareholders of Dorolum Siding Corp., a New York corporation. The corporation, which is no longer operating, was a general contractor specializing in the installation of aluminum siding.

3. The debtor was the president of Dorolum.

4. The creditor is a wholesale distributor of building products, including aluminum siding, and was a materialman of Dorolum.

5. Dorolum entered into contracts with several homeowners ("owners") in which it agreed to install aluminum siding and related fixtures on their homes.

6. In the period between September 12, 1978 and October 31, 1978 the creditor sold goods valued at $10,081.92 to Dorolum on open account. These goods were intended to be used and were in fact used, on residences upon which Dorolum was installing aluminum siding.

7. Dorolum paid for the goods with a series of checks that were dishonored. No part of Dorolum's debt has been paid. Tr. at 19.

8. Dorolum received full payment from the owners for its contract work. Tr. at 29–30.

9. Dorolum used the owners' funds to pay obligations other than the plaintiff's claim, including: secretaries and laborers' salaries, bookkeepers, insurance, telephone and other back bills, gasoline, installment payments on a truck loan, and debts owed to other creditors. Tr. at 31–33.

10. The debtor had knowledge that the owners' funds were being expended on the foregoing obligations. The debtor admits that payments received in August, September, and October of 1978 from jobs done for owners Cruz and Castro were used to pay secretaries, solicitors, insurance, and other obligations. Tr. at 30–33.

11. The debtor did not draw his salary from the corporation during August, September, or October of 1978, tr. at 31–32, 39, although he had collected a salary and other distributions from the corporation prior thereto. Tr. at 28.

12. In December of 1978, the creditor commenced a lawsuit against Dorolum, Paravante, and the debtor in New York State Supreme Court, Suffolk County. In its complaint, the creditor alleged that the defendants had failed to pay for goods sold to them, that the funds the defendants received in connection with their installation contracts constituted trust funds under the New York Lien Law which the defendants were obligated to hold for the benefit of persons who had furnished materials in connection with those contracts, and that the defendants breached their trust by failing to make payment to the plaintiff, a materialman.

13. On November 9, 1979 the creditor's motion for summary judgment in the state court was granted without opposition. Judgment was entered on December 4, 1979 awarding the creditor judgment the sum of $10,081.92 plus interest. The court declared the defendants to be trustees of that sum.

14. The debtor has not made any payments on the judgment of December 4, 1979.

### Conclusion of Law

The plaintiff having established by a preponderance of evidence that its claim against the debtor arose because of his defalcation while acting in a fiduciary capacity, it should have judgment declaring that its claim for $10,081.92, together with post-judgment interest, is not dischargeable in bankruptcy.

### Memorandum

■ Section 523(a) of the Bankruptcy Code, which serves as the basis of the plaintiff's action, provides (in pertinent part):

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny....

11 U.S.C. § 523(a). This provision is not intended to effect a substantive change over prior law, *see* H.R.Rep.No.95–595, 95th Cong., 1st Sess. (1977) 363, U.S.Code Cong. & Admin.News 1978, p. 5787, which excepted from discharge debts which "were created by [the bankrupt's] fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity...." 11 U.S.C. § 35(a)(4) (1976). The thrust of these provisions is to make nondischargeable any debt which arises from a debtor's misconduct while acting in a fiduciary capacity. While it is unclear whether these provisions are intended to reach purely innocent defaults by a trustee, *compare Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir. 1937) ("defalcation" may demand some portion of misconduct) (dicta) *with In re Kawczynski*, 442 F.Supp. 413 (W.D.N.Y.1977) ("defalcation" includes innocent defaults), it is settled that they apply regardless of the trustee's ignorance of his legal duties, *see In re Hammond*, 98 F.2d 703 (2d Cir. 1938), *cert. denied*, 305 U.S. 646, 59 S.Ct. 149, 83 L.Ed.2d 418 (1938). Moreover, it is clear that the word "defalcation" is a more encompassing term than "embezzlement" or "misappropriation." *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir. 1937). *See generally* 3 Collier on Bankruptcy ¶ 523.-14[1][6] (15th ed. 1979); 1A Collier on Bankruptcy ¶ 17.24[2] (14th ed. 1978). Knowledge of the facts underlying a breach of trust will alone lead to liability on the part of a corporate officer who has abused his position as a fiduciary. *See In re Hammond*, 98 F.2d 703, 705 (2d Cir. 1938), *cert. denied*, 305 U.S. 646, 59 S.Ct. 149 (1938); *In re Bernard*, 87 F.2d 705, 707 (2d Cir. 1937).

■ In the case at bar, there is no substantial question as to Dorolum's breach of trust under Article 3–A of the New York Lien Law. There is no dispute that materials valued at $10,081.92 were purchased by Dorolum on open account from the plaintiff, that these materials were used by Dorolum in connection with its contracts with various owners for home improvement work, and that Dorolum used the funds received from these owners for other business purposes without paying any part of its debt to the plaintiff. Section 70 of the Lien Law provides that funds "received by a contractor under or in connection with a contract for an improvement of real property ... constitute assets of a trust...." Section 71(2)(a) further provides that "trust assets of which a contractor ... is a trustee shall be held and applied for the following expenditures arising out of the improvement of real property ... and incurred in the performance of his contract ... (a) payment of the claims of subcontractors, architects, engineers, surveyors, laborers and materialmen...." New York Lien Law § 71(2) (McKinney 1966). A breach of trust is defined by the statute as follows:

Any transaction by which any trust asset is paid, transferred or applied for any purpose other than a purpose of the trust as stated in subdivision one or subdivision two of section seventy-one, before payment or discharge of all trust claims with respect to the trust, is a diversion of trust assets, whether or not there are trust claims in existence at the time of the transaction, and if the diversion occurs by the voluntary act of the trustee or by his consent such act or consent is a breach of trust.

*Id.* § 72(1). Thus, Dorolum's use of the owner's funds for non-trust purposes before payment of the plaintiff's trust claims is a breach of trust within the meaning of section 72 of the lien law. *In re Morris Ketchum, Jr. and Associates*, 409 F.Supp. 743 (S.D.N.Y.1975). Indeed, Dorolum is strictly liable for its breach of trust under Article 3–A of the New York Lien Law. *Schwadron v. Freund*, 69 Misc.2d 342, 329 N.Y.S.2d 945 (Sup.Ct.1972).

The debtor is personally liable for his corporation's breach of trust. The officers

and directors of a corporation have a duty to beneficiaries of a trust administered by the corporation to prevent its misuse of trust funds. Either participation in the use of trust funds for other business purposes, or mere knowledge of this wrong, is sufficient to give rise to personal liability for breach of trust. *Santa Barbara v. Pasquale Avallone & Stefano Miele, Inc.,* 270 N.Y. 1, 6, 199 N.E.2d 777 (1936); *Schwadron v. Freund,* 69 Misc.2d 342, 329 N.Y.S.2d 945 (1972). *See also In re Bernard,* 87 F.2d 705 (2d Cir. 1937). In the case at bar, the debtor's admission that he knew of Dorolum's use of trust funds to pay the salaries of office personnel and corporate officers, various office expenses, and insurance premiums, establishes the debtor's personal liability for breach of the Lien Law trust.

In order to bar discharge of the judgment under section 523(a)(4), it is not enough that the debtor should be found liable under state law as a trustee: rather, it must appear that the debtor stood in a fiduciary relationship with the plaintiff before his corporation's misapplication of funds and without reference thereto. In *Davis v. Aetna Acceptance Co.,* the Supreme Court indicated that the liability of a constructive trustee could be discharged notwithstanding the comparable provisions of the Bankruptcy Act: "It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become charge-above as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto...." 293 U.S. 328, 333, 55 S.Ct. 151, 154, 79 L.Ed. 393 (1934). This Court is satisfied, however, that the debtor's confidential relationship with his corporation's materialmen preceded its misapplication of trust funds. This is the only conclusion which finds support in the legislative history purpose and structure of article 3–A. The statute had its origins as a criminal provision intended to deter contractors and their directors, officers and agents from engaging in the practice of "pyramiding," by which funds received in connection with one project were used to finance construction on another. *See* 1942 Report of the

N.Y.Law Revision Comm'n 298, 299. For a variety of reasons, including the strict construction which the courts placed upon penal statutes, *see Raymond Concrete Pile Co. v. Federation Bank & Trust Co.,* 288 N.Y. 452, 43 N.E.2d 486 (1942), the legislature added civil remedies which were coextensive with the criminal sanctions of the statute. *See* 1942 Report of the New York Law Revision Comm'n 283, 284, 298–99. Subsequent cases, *see Aquilino v. United States,* 10 N.Y.2d 271, 176 N.E.2d 826, 219 N.Y.S.2d 254 (1961), and revisions of the Lien Law, *see* 1959 N.Y.Laws ch. 696, § 2, have made it clear that the purpose of the statute is to create a trust relationship as soon as the contractor receives construction funds, whether or not a materialman's claim has come into existence. *See* N.Y. Lien Law § 70(3) (McKinney 1966). Since the New York courts have made the liability of managing officers coextensive with that of the corporate contractor, provided they have participated in or have knowledge of the misapplication of trust funds, *see Schwadron v. Freund,* 69 Misc.2d 342, 329 N.Y.S.2d 945 (1972), the conclusion is inescapable that the debtor herein was a fiduciary prior to his corporation's misapplication of trust funds. *In re Evans,* 1 B.R. 229 (Bkrtcy.S.D.Fla.1979). *See also Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir. 1980) (construing analogous provisions of Oklahoma Law); *In re Romero,* 535 F.2d 618 (10th Cir. 1976) (construing New Mexico law). The plaintiff, accordingly, is entitled to a judgment declaring that the debtor's judgment debt to the plaintiff is not dischargeable in bankruptcy.

Settle judgment in accordance herewith.