In re Lawrence W. MARINO, Jr., Mary Etta Marino, Debtors.

STANLEY SILVERBLATT ELECTRICAL CONTRACTOR, INC., Plaintiff,

v.

Lawrence W. MARINO, Jr., Defendant.

Cesar GAMBOA and Alicia Gamboa, Plaintiffs,

v.

Lawrence W. MARINO, Jr., Defendant.

Iky TSAO and Josephine Tsao, Plaintiffs,

v.

Lawrence W. MARINO, Jr., and Mary Etta Marino, Defendants.

ENCORE MECHANICAL CONTRACTORS, INC., Plaintiff,

v.

Lawrence W. MARINO, Jr., Defendant.

Bankruptcy No. 88–5–1829–SD.

Adv. Nos. A88–0276–SD, 88A–0280–SD, A88–0301–SD and A88–0304–SD.

United States Bankruptcy Court, D. Maryland.

June 26, 1990.

Gerald Danoff, Danoff & King, P.A., Towson, Md., for debtor and defendant.

Ralph Murdy, Baltimore, Md., for plaintiff Stanley H. Silverblatt Elec. Contractor, Inc.

Michael G. Rinn, Timonium, Md., for plaintiffs Iky and Josephine Tsao.

John P. Geiss, Baltimore, Md., for plaintiff Encore Mechanical Contractors, Inc.

Michael E. Marino, Hall, Levy & Marino, P.A., Baltimore, Md., for plaintiffs Cesar G. and Alicia Gamboa.

## MEMORANDUM OF DECISION AS TO MOTIONS TO DISMISS

E. STEPHEN DERBY, Bankruptcy Judge.

The issues raised by Debtors' motions to dismiss involve whether Debtor can discharge personal liability for breaches of Maryland lien trust laws by his construction company.

Motions to dismiss in these four adversary proceedings are consolidated for purposes of this opinion. Each proceeding was commenced by a creditor of Lawrence W. Marino, Jr., ("Debtor") to determine dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(4). Each proceeding arose under a similar set of facts. L.W. Marino, Inc. ("Contractor") is in the business of contracting to build residential homes. Debtor is alleged to be an officer, director, employee and sole stockholder of Contractor. The Contractor failed to pay subcontractors from monies paid by property owners, and allegedly held in trust under Maryland law to pay subcontractors. Debtor and his wife subsequently filed a joint voluntary petition for protection under Chapter 7 of the Bankruptcy Code on June 22, 1988.

### I.

#### *Contentions of the Parties*

In Cesar Gamboa and Alicia Gamboa ("Gamboas") v. Lawrence W. Marino, Jr. (Adv. No. 88A–0280–SD) and Iky Tsao and Josephine Tsao (Tsao) v. Debtors (Adv. No. A88–0301–SD), the plaintiffs in each are the owners of a residential home contracted to be constructed by Contractor. In Stanley H. Silverblatt Electrical Contractor, Inc. ("Silverblatt") v. Lawrence W. Marino, Jr. (Adv. No. A88–0276–SD) and Encore Mechanical Contractors, Inc. ("Encore") v. Lawrence W. Marino, Jr. (Adv. No. A88–0304–SD) the plaintiffs are subcontractors employed by Contractor for construction of residential homes. The plaintiffs rely on the §§ 10–501 *et seq.* ("Maryland Custom Home Protection Act") and §§ 9–201 *et seq.* ("Trust Relationships in the Construction Industry") of the Real Property Article of the Annotated Code of Maryland to bring the debts claimed under the exception to discharge provided for in § 523(a)(4).

Gamboas allege in their amended complaint that on or about May 5, 1987, they entered into a contract with Contractor to construct a residential home on property owned by them. Terms of the contract provided that subcontractors hired by Con-

tractor were to be paid for services and materials from payments made by Gamboas to Contractor. Gamboas remitted payments to Contractor in amounts in excess of amounts owed to subcontractors. On or about January 17, 1988, Contractor ceased construction, thus leaving the home incomplete. Contractor also failed to disburse monies due subcontractors, and subcontractors have begun to commence mechanic's lien actions against Gamboas. As a result of the breach by Contractor, Gamboas incurred costs to defend the mechanics lien actions and to complete construction in excess of what they would have paid under the contract with Contractor.

Gamboas assert that monies received by Contractor were held in trust for Gamboas pursuant to § 10–502 of the Maryland Custom Home Protection Act. The Contractor's failure to pay subcontractors who provided services or materials, they contend, created a rebuttable presumption of use or appropriation of such monies in violation of the trust pursuant to § 10–503 of the same Act.

Further, Gamboas allege Contractor held monies received by Gamboas in trust for payment of subcontractors pursuant to § 9–201(a) of the Maryland Real Property Article. Nonpayment of such money by Contractor, and by Debtor as an officer, director and employee of Contractor, to subcontractors evidenced fraudulent use of the money for a purpose other than the required payment of subcontractors. Therefore, Debtor is personally liable to Gamboas for any damage resulting from the fraud. Finally, Gamboas allege that as a result of the fraud under § 9–203, Debtor's debt for damages to Gamboas is not dischargeable pursuant to 11 U.S.C. § 523(a)(4).

Tsaos base their complaint on a factual scenario similar to Gamboas. Mrs. Marino has been dismissed as a defendant by consent. Tsaos entered into a contract with Contractor on October 9, 1986 to construct a home on their lot, and they paid at that time a $5,000.00 deposit to Contractor. Between October 9, 1986 and August 21, 1987, Contractor received an additional $280,000.00 from Tsaos. Tsaos allege a trust pursuant to §§ 10–502 and 9–201 of the Real Property Article. Tsaos have received notices from subcontractors asserting liens in the amount of $33,240.61 because Contractor failed to pay such subcontractors with the money Tsaos had previously paid to Contractor.

In addition to Count II, "Fiduciary Fraud/Defalcation Misuse of Trust Funds" pursuant to 11 U.S.C. § 523(a)(4), Tsaos included Count I, "Unlawful Trade Practice Custom Home Protection Act Non–Disclosure" pursuant to 11 U.S.C. § 523(a)(6) and Count III, "Unlawful Trade Practice Custom Home Protection Act Misuse of Funds" pursuant to 11 U.S.C. § 523(a)(4). Both of these additional counts are also based in § 10–501 et seq. of the Real Property Article.

In Count I Tsaos allege Contractor's failure to include certain disclosures as required by §§ 10–505 and 10–506 of the Real Property Article. Section 10–507 provides that such a failure constitutes an unfair or deceptive trade act in violation of §§ 13–301 and 13–303 of the Commercial Law Article of the Annotated Code of Maryland. As a result of these wilful and malicious unfair or deceptive trade practices, Tsaos allege that they were induced to enter into the construction contract. Thus, damages incurred thereby should be non-dischargeable as a wilful and malicious injury by Debtor pursuant to 11 U.S.C. § 523(a)(6).

In Count III, Tsaos allege that the failure to pay the subcontractors constitutes a wilful and malicious trade practice as set out above and thus renders the debt in the amount of the liens against the property non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

Silverblatt is a subcontractor, as opposed to an owner of home under contract to be constructed. The parties stipulated as to certain matters. Subtitle 2, Title 9 of the Real Property Article of the Maryland Code took effect on July 1, 1987. [Md.Real Prop.Code Ann., §§ 9–201, et seq. (1988 Repl.Vol.)] Debtor, Lawrence W. Marino, Jr. "... is defined by the provisions of Subtitle 2 of Section 9 as a 'contractor' pursuant to the definitions contained therein. Similarly, the Plaintiff [Silverblatt] is a

'sub-contractor'". Stipulation, Paragraph 2 (Dkt. No. 10). The building contracts between the owners and Debtor [Contractor] were entered into prior to the effective date of Subtitle 2. One set of owners, Dr. and Mrs. Medina, paid $129,000 to Debtor prior to the effective date of the statute and $179,500 to Debtor after the effective date of the statute. Silverblatt worked for Debtor on an oral contract basis. All work was ordered, and performed by Silverblatt, subsequent to the effective date of the statute.

Silverblatt alleges that monies paid to Contractor pursuant to contracts for construction of two residential homes, one for the Gamboas and one for the Medinas, were held in trust to pay subcontractors hired to perform services or provide materials for such construction. Further, monies were received by Contractor and not paid to Silverblatt. Silverblatt prays that the $5,036.30 owed to it be determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

Finally, Encore, a subcontractor, alleges that it was hired to perform plumbing services at property owned by Gamboas. Encore performed such services, but was not paid by Contractor, which had previously received money from Gamboas. Encore alleges that Debtor is liable pursuant to § 9–203 of the Real Property Article as an officer of Contractor, and that both Contractor and Debtor held monies received from the Gamboas or their lender in trust for payment to subcontractors. Encore alleges that Debtor both fraudulently induced the Gamboas' lender to release Draw # 3 and fraudulently induced Encore to perform work without a written contract as proposed by Encore. Contractor is also alleged to be in violation of §§ 10–502 and 10–503 of the Real Property Article.

Debtor moved to dismiss each of the complaints arguing failure to state a claim upon which relief may be granted. Debtor argues that each contract with a property owner on which the complaints are based was entered into between the owner and Contractor prior to July 1, 1987, the effective date of §§ 9–201 et seq. Thus, any payments made pursuant to such contracts by the owners were not subject to the statutory trust imposed by this subtitle, even if payments were made after the effective date of the statute.

As to § 10–501 et seq., Debtor argues that the trust imposed by § 10–502 applies to the Contractor only, and not to an officer, director or employer of the Contractor. As neither set of statutes explicitly imposed fiduciary obligations on Debtor individually, Debtor argues that no debts he owes can be held non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## II.

### Conclusions of Law

■ Motions to dismiss are governed by Federal Rule of Civil Procedure 12(b)(6) as incorporated in Bankruptcy Rule 7012(b), and complaints should be liberally construed and viewed "in the light most favorable to the Plaintiff." *In re Brandt–Airflex Corp.*, 69 B.R. 701 (Bankr.E.D.N.Y. 1987), quoting *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Motions to dismiss for failure to state a claim should only be granted if there is no doubt that, even if plaintiff is able to prove all facts necessary to support his claim as alleged, plaintiff would not be entitled to the relief sought. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531 (4th Cir.1988).

■ Exceptions to discharge should be strictly construed against a creditor opposing discharge and in favor of the debtor in order to protect a debtor's fresh start. *E.g., In re Wade*, 43 B.R. 976 (D.Colo.1984). In order for a debt to be rendered nondischargeable pursuant to § 523(a)(4) of the Bankruptcy Code, the plaintiff must show that the debtor incurred the debt through defalcation while acting in a fiduciary capacity. Section 523(a)(4) provides:

"(a) discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

"(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ...."

## A. *Fiduciary Capacity*

For a trust relationship to satisfy the fiduciary capacity requirement of 11 U.S.C. § 523(a)(4), the trust on which it is based must be a technical trust in existence at the time of the defalcation. *In re Shipe*, 41 B.R. 584 (Bankr.D.Md.1984); *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934) (decided under § 17(a)(4) of the Bankruptcy Act, the predecessor to § 523(a)(4)). An implied trust does not satisfy the requirement, nor does a trust *ex maleficio, i.e.* a trust which is created by the very wrongdoing from which the debt arises. *Id.; Matter of Angelle*, 610 F.2d 1335 (5th Cir.1980). The fiduciary relationship must exist prior to, or independent of, the transaction from which the contested debt arose. To determine whether a trust relationship exists, and if so, what is the nature of the trust relationship, it is necessary to look to state law, which in these proceedings is the law of Maryland. *In re Shipe, supra*, 41 B.R. at 587–88, and cases cited therein.

In *Matter of Angelle, supra*, the court held that a Louisiana statute, which made it a crime for a contractor to use funds received under a construction contract for any purpose other than payment for materials and labor, was not sufficient to satisfy the fiduciary relationship requirement of § 17(a)(4) of the Bankruptcy Act. Without deciding whether the statute was sufficient to create a trust, the court concluded that even assuming a trust arose, it arose only at the time of, and because of, the misappropriation, *i.e.* it was a trust *ex maleficio*. Therefore, it did not satisfy the requirement that the trust arise prior to the act creating the debt. Accord, *Matter of Cross*, 666 F.2d 873 (5th Cir., Unit B 1982) which reached a similar result applying Georgia law.

Although a Texas statute designated construction payments as trust funds, it was held insufficient to establish a fiduciary relationship which would satisfy the fiduciary capacity requirement of 11 U.S.C. § 523(a)(4) in *Matter of Boyle*, 819 F.2d 583 (5th Cir.1987). The only fiduciary duty imposed by the Texas statute was to make it a crime for the trustee to misappropriate contract payments for other purposes with intent to defraud. The court reasoned that absent intent to defraud, the diverter was only a personal guarantor, and therefore the court found it was error to sustain the objection to discharge. *Id.* at 592–93.

In *Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir.1980) an Oklahoma statute was upheld as sufficient to establish an express trust which effected a fiduciary relationship between the creditor and debtor upon receipt of the construction funds, and not upon their later misappropriation. Therefore, the defalcation was sufficient to justify denying the discharge of these debts under § 17(a)(4) of the Bankruptcy Act, which the court noted was "... essentially carried over in § 523(a)(4) ..." of the Bankruptcy Code. *Id.* at fn. 1. The Oklahoma applicable lien trust statute provided:

> " '(2) The monies received under any mortgage given for the purpose of construction or remodeling any structure shall upon receipt by the mortgagor be held as trust funds for the payment of all valid lienable claims due and owing or to become due and owing by such mortgagor by reason of such building or remodeling contract.' "

> \*     \*     \*     \*     \*     \*

> " '(1) Such trust funds shall be applied to the payment of said valid lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing shall have been paid.' " *Id.* at fn. 2.

Accord, *In re Johnson*, 691 F.2d 249 (6th Cir.1982) (Michigan Building Contract Fund Act); *Matter of Thomas*, 729 F.2d 502 (7th Cir.1984) (under Wisconsin law and 11 U.S.C. § 523(a)(4)); *In re Weedman*, 65 B.R. 288 (Bankr.W.D.Ky.1986) (under Kentucky statute which required contractor receiving payments from owner where mechanics lien could be imposed to pay for labor and materials, but did not use the word trust). See *Matter of Polidoro*, 12 B.R. 867 (Bankr.E.D.N.Y.1981) (existence

of trust under New York lien law conceded).

### B. *Maryland trust statutes*

■ The operative section of the Maryland Custom Home Protection Act [Md. Real Prop.Code Ann., §§ 10–501—10–509 (1988 Repl.Vol.)] is § 10–502. It provides:

"Any consideration received by a custom home builder in connection with a custom home contract shall be held in trust for the benefit of the buyer [the property owner who has contracted to have the custom home built]. Payments made to subcontractors or suppliers in connection with the custom home contract shall be consistent with the trust."

The Act also requires the custom home builder to deposit advance payments of more than 5% of the contract price into an escrow account, from which withdrawals may be made only for designated purposes. *Id.* at § 10–504. Failure of the custom home builder to pay for labor or materials after payment has been advanced by the owner/buyer creates a rebuttable presumption that the payments have been used in violation of the trust. *Id.* at § 10–503.

These provisions create a technical trust in favor of the buyer/owner, but not one in favor of subcontractors or suppliers. In structure, they are more akin to the Oklahoma statute recognized as creating an express trust in the *Carey Lumber Co.* case, *supra*, than to the trusts *ex maleficio* identified in the *Angelle* and *Cross* cases, *supra*. Consequently, the violation of this trust could satisfy the fiduciary capacity requirement of 11 U.S.C. § 523(a)(4) for denying dischargeability of a debt created thereby as to a buyer/owner. Nevertheless, because § 10–502 by its terms does not create a trust in favor of subcontractors, the claims of Encore based on violations of this Act must be dismissed.

■ Under the subtitle headed "Trust Relationships in the Construction Industry", an express trust is also created. Md. Real Prop.Code Ann. §§ 9–201—9–204 (1988 Repl.Vol.). Pursuant to § 9–201(a) contractors and subcontractors who receive money from owners are trustees for such money which is held in trust.

"(a) *Moneys to be held in trust.*—Any monies paid under a contract by an owner to a contractor, or by the owner or contractor to a subcontractor for work done or materials furnished, or both, for or about a building by any subcontractor, shall be held in trust by the contractor or subcontractor, as trustee, for those subcontractors who did work or furnished materials, or both, for or about the building, for purposes of paying those subcontractors." *Id.* at § 9–201(a).

The Trust Relationships subtitle was enacted promptly after, and apparently partially in response to, a decision by the Court of Special Appeals of Maryland in *Ridge Sheet Metal Co., Inc. v. Morrell*, 69 Md.App. 364, 517 A.2d 1133 (1986). See 1987 Md.Laws, Ch. 345. The *Ridge Sheet Metal* case held that a subcontractor, who had not been paid by a general contractor, could not establish a mechanics lien against a dwelling being erected on an owner's land because the general contractor had abandoned work and had no enforceable claim to the retainage. The lien of a subcontractor on a single family residence could not exceed the amount owed on the contract by the owner. Md.Real Prop.Code Ann. § 9–104(a)(2) (1988 Repl.Vol.). The subtitle represents an effort to provide additional protection to subcontractors which complements the mechanics lien law. See generally, Albright, *The Maryland Construction Trust Statute: New Personal Liability–Its Scope and Federal Bankruptcy Implications*, 17 Baltimore L.Rev. 482 (1988).

The trust is created, however, in favor of subcontractors "... who did work or furnished materials ... for ... the building, ...." Md.Real Prop.Code Ann. § 9–201(a). The Trust Relationships subtitle does not provide a basis for an owner to object to discharge of a debt for defalcation by a contractor while acting in a fiduciary capacity toward the owner.

### C. *Impact of Effective Date*

■ The court recognizes the arguments of Debtor concerning the effective date of the Trust Relationships statute, but rejects them as not well-founded. The ef-

fective date for Title 9, Subtitle 2 of the Real Property Article was July 1, 1987. 1987 Md.Laws, Ch. 345, § 2. The contracts between Contractor and the lot owning plaintiffs were executed prior to July 1, 1987; but payments were made to Contractor after July 1, 1987, which allegedly were not paid over to subcontractors. Debtor argues that the general rule is statutes should be applied prospectively. Retroactive effect of new statutes is not favored, and a statute will not be given retroactive effect unless there is a plain legislative mandate for retroactive application. *Rowe v. Cullen,* 177 Md. 357, 368, 9 A.2d 585, 590 (1939) (law passed after death of testatrix did not affect rights of her legatees, devisees or survivors in her estate); *WSSC v. Riverdale Hghts. Vol. Fire Co.,* 308 Md. 556, 520 A.2d 1319, 1321–22 (1987) (and cases cited therein) (presumption against retrospective application is rebuttable, but was not rebutted by plain legislative mandate to provide immunity from claim for tort injury which occurred prior to statute's effective date). Since the statute does not state it should be applied retroactively, Debtor maintains that subtitle 2 should be applied prospectively only to relieve him of any fiduciary obligations to carry out obligations he had assumed.

Debtor is in substance urging that the Contractor has a vested right in the contracts which would allow it to breach the contract requirements to pay subcontractors without incurring liability on alternate grounds for a breach of trust. The court does not accept that Debtor has a vested right to breach a contract with impunity. Further, and in any event, when subtitle 2 is applied prospectively, it applies to all contract payments made after July 1, 1987. Cf., *Marco Associates, Inc. v. Comptroller of the Treasury,* 265 Md. 669, 291 A.2d 489 (1972) (1967 amendments which first made federal capital gains taxable was applicable to proportion of gain from 1964 sale where taxpayer had elected to defer recognition of an installment until 1968). The event which triggered the subtitle 2 trust was the contractual payment after its effective date, not entry into the contract itself. Contract payments made before the July 1, 1987 would be excluded as not received by Contractor subject to Subtitle 2's requirements because it was not yet in effect.

Therefore, without doing violence to the proposition that new statutes and amendments take effect prospectively, unless retroactive application is specifically mandated, the provisions of §§ 9–201—9–204 are applicable to contractual payments made after the effective date on July 1, 1987. Debtor's motions to dismiss will thus not be granted on the ground the trust statute is inapplicable to existing, but uncompleted, contracts on the statute's effective date.

### D. *Status of Individual*

The remaining question is whether the individual Debtor stood in a fiduciary capacity toward the plaintiffs. The instant Contractor was a corporation, of which Debtor was an officer. It was the Contractor that was the contracting party with the owner plaintiffs, and it was the Contractor on which the trust obligations were imposed literally. Therefore, Debtor contends Maryland's construction trust statutes do not provide any basis for claiming Debtor was acting in a fiduciary capacity.

Some trust statute cases have held an individual debtor who was involved with the contractor entity was not discharged. In the *Thomas* case, *supra,* the individual debtors were treated as acting in a fiduciary capacity, without discussion of this issue, where they were doing business as a company and as a corporation and they diverted payments.

The *Carey Lumber Co.* case, *supra,* involved payments pursuant to construction mortgages executed by a corporation of which the debtor was the managing officer. The court concluded the statutory trust for monies received under the mortgages effected a fiduciary relationship for the corporation and its managing officer, the debtor. *Id.* 615 F.2d at 374. What the statute provided was that "[i]f the party receiving any money under [the section imposing the trust on the mortgagor] shall be a corporation, such corporation and its managing officers shall be liable for the proper application of such trust funds." *Id.,* 615 F.2d at 373, fn. 2. Debtor was thus expressly

made responsible for administering the trust funds.

The controlling issue in the *Polidoro* case, *supra,* was whether the debtor, an officer, director and shareholder of the contractor corporation which concededly was liable for breach of the statutory trust under New York law, stood in a fiduciary relationship to plaintiff such as to bar the debtor's discharge under 11 U.S.C. § 523(a)(4). The court concluded the debtor did stand in such a fiduciary relationship. The reason was that the debtor admitted he knew of the diversion of trust funds to pay salaries and other expenses, and New York law made the liability of managing officers coextensive with that of corporate contractors where the managing officer had participated in or had knowledge of the misapplication of trust funds. *Id.,* 12 B.R. at 871.

In order to protect a debtor's opportunity for a fresh start, the discrete bases for both an individual debtor's personal liability and his preexisting fiduciary relationship toward a claimant which has been breached must be established. In the *Cross* case, *supra,* the individual debtor contracted on behalf of his wholly owned corporation as its president. Although the denial of discharge was reversed on other grounds, the circuit court was pointedly disturbed that the lower courts had not addressed why the liability of debtor's corporations could be asserted in his individual bankruptcy case. *Id.,* 666 F.2d at 879, fn. 9. The court discussed the danger of ignoring the separate individual and corporate capacities as follows:

"The overriding purpose of the bankruptcy laws is to provide the bankrupt with comprehensive, much needed relief from the burden of his indebtedness by releasing him from virtually all his debts. [citations omitted] To this end, the courts have narrowly construed exceptions to discharge against the creditor and in favor of the bankrupt. [citations omitted].... The exceptions to discharge found in § 17(a)(4) were designed to prevent the bankrupt from avoiding through bankruptcy the consequences of certain wrongful acts by providing protection to a certain class of creditors. The excep-

tions to discharge were not intended and must not be allowed to swallow the general rule favoring discharge.

"For a debt to be nondischargeable under this section, the creditor must be among the protected class; an officer's unfaithfulness to or mismanagement of his corporation will not give rise to nondischargeable liability directly to individual creditors of the corporation. A contrary rule would be unduly burdensome on the bankrupt and inconsistent with the basis policies underlying the Act. Where an officer breaches a fiduciary duty owed to his corporation, but the claimant under § 17(a)(4) is a corporate creditor, the amount sought to be declared nondischargeable may have little or no relation to the amount of the defalcation...." 666 F.2d at 879–80 (dicta).

■ The Maryland Custom Home Protection Act does not itself impose liability on officers or directors of corporations which might be liable under the Act. Md. Real Prop.Code Ann. §§ 10–501—10–509 (1988 Repl.Vol.). Custom home builder is defined as "... any person who seeks, enters into, or performs custom home contracts." *Id.* at § 10–501(d). Person is defined in § 10–501(h) to include a corporation.

Both of the contracts on which claims are made involving the Custom Home Protection Act were entered into by the plaintiff lot owners and Contractor (L.W. Marino, Inc.). The Act does not include in the definition of custom home builder an officer, director, or employee of a corporate entity which enters into the custom home contract. The custom home builder, for purposes of liability under the Act, is the Contractor entity, and not Debtor, whether as an officer, director, owner or employee of Contractor.

■ What is missing from the instant complaints by the lot owners is a basis for finding that Debtor, an individual officer of Contractor, was personally acting in a fiduciary capacity to plaintiffs. Since the Custom Home Protection Act does not expressly impose that liability, such liability if it exists must be founded on other facts and

law. However, plaintiffs have not alleged such other grounds.

The contract and disclosure requirements of the Act only apply to the custom home builder. *Id.* at §§ 10–505 and 10–506. The provision for violations based upon unfair or deceptive trade practices are dependent on other violations of the Act. *Id.* at § 10–507. Therefore, all counts and claims for relief founded on the Maryland Custom Home Protection Act against this individual Debtor should be dismissed since they are based on fiduciary and other obligations imposed only on the Contractor entity. This includes Count I of the Tsaos' complaint, because the plaintiffs rely on the Act to except the debts from discharge pursuant to § 523(a)(6) (wilful and malicious injury).

■ Dismissal of the counts relating to the Custom Home Protection Act leaves those complaints based on the Trust Relationships subtitle for disposition. Md.Real Prop.Code Ann. §§ 9–201—9–204 (1988 Repl.Vol.). The Trust Relationships subtitle does impose personal liability on officers, directors and employees of a contractor under certain conditions. Section 9–202 provides:

"Any officer, director, or employee of any contractor ..., who, with intent to defraud, retains or uses the moneys held in trust under § 9–201 of this subtitle, or any part thereof, for any purpose other than to pay those subcontractors for whom the moneys are held in trust, shall be personally liable to the person damaged by the action." *Id.* at § 9–202.

An initial issue is whether § 9–202 imposes fiduciary obligations on Debtor toward plaintiff subcontractors. By its terms it does not. Unlike the statute in the *Carey Lumber Co.* case, *supra,* it does not explicitly make corporate officers liable generally for application of trust funds. While § 9–202 places personal liability on an officer, it does so only when the officer diverts trust funds "... with intent to defraud,...." It is not a general fiduciary liability for all purposes. Therefore, the liability imposed on Debtor is more in the nature of personal liability as a guarantor if Debtor acted for the Contractor corporation with intent to defraud, similar to the nature of the liability found in the *Boyle* case, *supra,* and not liability as a trustee. Further, even if a trust relationship was found to exist, it would be a trust *ex maleficio,* and not a technical trust in existence. Therefore, an objection to discharge of an individual officer of a corporate contractor on the ground of defalcation while acting in a fiduciary capacity is not viable based solely on the Trust Relationships subtitle. However, if other grounds could be alleged, such as larceny, embezzlement, or fraud, an objection to discharge could be stated.

For example, Section 9–203 of the Trust Relationships subtitle provides that misuse of funds by, *inter alia,* an officer, of moneys held in trust is prima facie evidence of intent to defraud. That Section provides:

"The use by a contractor or subcontractor or any officer, director, or employee of a contractor or subcontractor of any moneys held in trust under § 9–201 of this subtitle, for any other purpose than to pay those subcontractors who did work or furnished materials, or both, for or about the building, shall be prima facie evidence of intent to defraud in a civil action." Md.Real Prop.Code Ann. § 9–203 (1988 Repl.Vol.)

If fraud is proven, an objection to discharge based on 11 U.S.C. § 523(a)(2)(A) might be available.

■ With reference to the Silverblatt complaint, an objection to discharge is stated under the Trust Relationships subtitle because Debtor has stipulated both that the Debtor is in fact a contractor within the meaning of that subtitle and Silverblatt is a subcontractor. Therefore, for the reasons stated above, a preexisting trust relationship has been established.

As to the Encore complaint, it does not allege grounds for denying the discharge of Debtor under the Trust Relationships subtitle and 11 U.S.C. § 523(a)(4) because of the failure to satisfy the fiduciary capacity test. However, Encore does allege fraud in the inducement which could state a cause of action under 11 U.S.C. § 523(a)(2)(A) against Debtor. However,

since this legal theory and the factual basis therefor are not alleged with particularity, the Encore complaint will be dismissed with leave to amend.

### III.

#### *Ruling*

For the reasons set forth, because the trust created by the Maryland Custom Home Protection Act (Md.Real Prop.Code Ann. §§ 10–501, et seq.) does not satisfy the fiduciary capacity requirement of 11 U.S.C. § 523(a)(4) as to a subcontractor, because the trust created by the Trust Relationships subtitle (*id.* at § 9–201, et seq.) does not satisfy the fiduciary capacity requirement as to a buyer/owner, and because neither statute by its terms imposes an existing fiduciary liability on an individual officer of a corporate contractor merely because of his status, the motions to dismiss the complaints of the Gamboas (Adv. No. 88A–0280–SD), the Tsaos (Adv. No. A88–0301–SD) and Encore (A88–03040–SD) will be granted and the complaints dismissed, with leave to amend. However, because of the stipulated applicability of the Trust Relationships subtitle, the motion to dismiss the Silverblatt complaint (Adv. No. A88–0276–SD) will be denied.