**In re Frank P. DINO, Debtor.**

**Samuel CELONE, Mario Olivelli and East Coast Development Corporation, Plaintiffs,**

v.

**Frank P. DINO, Defendant.**

**Bankruptcy No. 8700342.
Adv. No. 870056.**

United States Bankruptcy Court,
D. Rhode Island.

Jan. 25, 1988.

Steven H. Orabone, Quinn, Cuzzone & Geremia, Providence, R.I., for plaintiffs.

Peter P. D'Amico, D'Amico & Hurst, Providence, R.I., for defendant.

## DECISION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on December 2, 1987 on the plaintiffs' complaint to have a debt due from Frank Dino declared nondischargeable. There was an extended hearing and the testimony was wide-ranging—due mostly to the Court's failure to enforce its own rules, i.e., to require the parties to file a Joint Pre-trial Order before commencing trial. We take the responsibility for this, noting as well that the absence of a pre-trial order makes more difficult the job of paying attention to issues and facts that are relevant, and separating pertinent matter from the great volume of evidence that does not bear on the outcome. Nevertheless, we have analyzed the testimony and the exhibits, and make findings and conclusions as follows:

1. The parties have known each other since at least the early 1980's, and have been social friends, as well as business associates in other ventures.

2. In July 1985, Celone and Dino had preliminary discussions regarding a partnership arrangement, never reduced to writing, wherein they were to purchase commercial property on West Shore Road, Warwick, Rhode Island for $305,000.

3. They each were to put $10,000 to $15,000 cash into the venture, basically to provide funds for anticipated monthly shortfall on the mortgage and other regular expenses.

4. Four Thousand Dollars in cash was required at the closing, with the remaining closing costs coming from a $24,000 past rent credit, paid by Dino over a two year period, pursuant to an agreement he had with the seller, Milton Tanner. *See* Debtor's Exhibit A.

5. On August 30, 1985 Celone delivered $5,000 to Dino as part of his agreed contribution to the venture, but less than one week later, after hearing some unfavorable neighborhood gossip about Dino's questionable financial condition, vis-a-vis the advisability of going into business with him, especially with the investment required, and the fact that a foreclosure sale advertisement for Dino's home appeared in the Providence Journal on September 3, Celone decided that this venture was not for him, and he so advised Dino, *prior* to the mortgage closing date. It is clear that Celone acted in a timely manner.

The respective versions of exactly what was said by the parties differ, and even Celone's recital of the message he left with Dino cannot be described as forceful or decisive. But given the fact that these men were friends for a number of years, and since they already were engaged in another business together, it is not fatal to his case that Celone did not serve written, legal demand on Dino for the return of his $5,000. The effect was the same—Celone informed Dino, prior to the disbursement of any of his cash, that he did not want to continue the venture, as a partner or otherwise, and that he wanted his money back. We specifically reject Dino's contention that Celone merely was pulling out, but did not request the contemporaneous return of his $5,000. Dino's testimony on this point is implausible, to say the least, and it is our conclusion that when Celone backed out, Dino became a trustee and/or bailee in the amount of $5,000, and not just a debtor of Celone. This distinction is the essence of the dispute, and our findings of fact in Celone's favor are the basis for the legal conclusion that, contrary to Dino's contention that there existed only a debtor-creditor relationship when Celone said he "wanted out," a fiduciary relationship resulted. *See Ragsdale v. Haller,* 780 F.2d 794 (9th Cir.1986). In any event, regardless of the status of the parties, Dino never had the authority to use Celone's money to buy the subject property and to take title solely in his name. Dino's action would also have

been a breach of the prior agreement of the parties, even if they were still considered to be operating as partners.

This is not to say that when Celone backed out, he may not have been exposing himself to some type of liability to Dino—we do not decide that here, as we are called upon now to rule only as to the dischargeability of Celone's claim against Dino.[1]

Celone's claim to have Dino's debt declared nondischargeable is based on 11 U.S.C. § 523(a)(4), which states in pertinent part

>     (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> >     (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

The evidence mandates the conclusion that Dino was a fiduciary when he used Celone's money for his own business purposes, and the cases cited by Celone support that conclusion. "A partner's obligation to the partnership has been held to create an express trust under the Uniform Partnership Act, thus satisfying the 'Fiduciary Capacity' requirement of 11 U.S.C. § 523(a)(4)." *In re Owens*, 54 B.R. 162 (Bankr.D.S.C. 1984). "Generally, defalcation is a failure to account for money or property that has been entrusted to one." *In re Cowley*, 35 B.R. 526, 529 (Bankr.D.Kan.1983). Dino's unauthorized use of Celone's money, entrusted to him while he was a fiduciary, constitutes defalcation within the meaning of the statute.

In addition, it is clear, based on the evidence, that Dino had the intent to act as he did. There is no way that Celone's conduct can be interpreted to have conferred upon Dino the authority to go ahead, use Celone's money to purchase property solely in his (Dino's) name, and go into a speculative business venture at a time when he was clearly insolvent. The incentive and the pressure for Dino to act as he did are obvious, because without Celone's money (notwithstanding Dino's assertions to the contrary)[2] Dino would not have been able to exercise the purchase option (which was about to expire) and thereby salvage the $24,000 that he had already invested.

Celone's testimony was credible, while Dino's, whose version of important facts was most unrealistic, is not entitled to much weight.[3]

For the foregoing reasons, the complaint of Samuel Celone to have his debt from Frank Dino declared nondischargeable is granted, and it is so ordered.

Enter Judgment accordingly.

---

1. If we were required to decide that question, based upon the record we would find that Celone's withdrawal from the venture was justified, and clearly done within a reasonable time after his discovery of the facts regarding Dino's insolvency.

2. In an attempt to explain the inconsistency between his present assertion that he was solvent at the time in question, with his sworn schedules showing indebtedness of more than $900,000, Dino lays the blame at the feet of an anonymous lawyer who allowed all of his "meritorious" defenses to be lost through default judgments. Dino produced no testimony or records to refute what clearly appears to be an impossible financial dilemma, and his attempt to place the responsibility for his "apparent" insolvency upon unnamed others, is rejected.

3. Although Frank Dino was much more articulate and glib than Sam Celone, the credibility issue must be resolved in favor of Celone.