In re Joseph A. LEWIS, II, Tamara A. Lewis, Debtors.

Marvin Ralph SAGER, Plaintiff,

v.

Joseph A. LEWIS, II, Defendant.

Bankruptcy No. 87–01659–R.
Adv. No. 87–0447–R.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Dec. 7, 1988.

Larry A. Pochucha, Bremner, Baber & Janus, Richmond, Va., for plaintiff.

Michael J. Champlin, White, Blackburn, & Conte, P.C., Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

This matter came on for a trial upon the complaint of Marvin Ralph Sager ("Sager") to determine the dischargeability of a debt of the debtor, Joseph A. Lewis, II ("Lewis" or "the Debtor"), pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). Based upon the evidence adduced at trial, the Court concludes that the indebtedness, if any, of the Debtor to Sager was properly discharged in bankruptcy.

## FINDINGS OF FACT

Sometime in July of 1983 Sager and Lewis entered into an agreement to form a partnership to be known as Universal Select Animals ("Universal"), whose business was to be the buying and selling of exotic reptiles. The agreement was unwritten, but the partnership's form can be gleaned from the testimony of Sager and Lewis. The partners agreed that Sager would put up $5,000 in initial capital in exchange for a 50% ownership interest in the business. Lewis was to provide the equipment and inventory which were already in his possession, as well as his know-how and contacts in the reptile trade. The partners decided that the business, which was to be operated out of Lewis' home, would pay for Lewis' electric bill and business-related phone charges. Lewis claims that the partners agreed to pay his entire phone bill, including the base rate charges. The partners agreed to share the work involved in the business, i.e. cleaning cages, feeding the animals, buying, selling, and marketing, etc.... A partnership checking account was created, with Lewis given sole authority to write checks from the account.

During 1983 and 1984, the partnership was marginally profitable, and the number of animals kept in inventory at Lewis' home steadily increased. Sager made a number of additional transfers of assets to the business, aggregating around $9,000. For reasons which are unclear, however, the business began to sour in 1985, and markedly deteriorated in 1986. Sometime in the spring of 1986, the partnership was terminated. Subsequently, Lewis used the partnership's assets in a new reptile brokerage venture. This new business also assumed the debts of the terminated partnership, which appear to have amounted to approximately $22,000.

The record in this trial reveals that the partnership was at best poorly managed. The books were shoddily kept. Lewis admitted to using his personal checking account and credit cards for business purposes, and to using, at least on a couple of occasions, business funds for personal expenses. Transactions, involving both purchases and sales of reptiles, were carried out without receipts, and sometimes without records of any kind. Both of the partners took out personal loans and, without any real bookkeeping, poured the proceeds into the business.

The evidence showed that upon dissolution of the partnership, Lewis failed to give an accounting of the partnership's assets and liabilities to Sager. The evidence also showed, however, that the records of the business—such as they were—rested in Sager's possession. Even if an accurate accounting were possible given the business' scanty records, Lewis may have been unable to account without access to these records.

## CONCLUSIONS OF LAW

In his amended complaint, Sager seeks a finding by this Court that Lewis' debt to him is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4).

■ As a preliminary matter, the Court notes that at trial Sager did not rely heavily on § 523(a)(2)(A), conceding it to be the weaker of his two arguments. This section of the Code provides that:

A discharge under § 727 ... of this title ... does not discharge an individual debtor from any debt ... for money, property, [or] services, ... to the extent obtained, by ... false pretenses, *a false representation, or actual fraud* ...

11 U.S.C. § 523(a)(2)(A) (emphasis added). Thus, for Sager to have succeeded under this section, the Court must have found that Lewis obtained Sager's property, in this case money, by either false pretenses, false representations, or actual fraud. Although Sager's complaint states claims of both false representations and actual fraud, the evidence presented at trial leads the Court to conclude that no claim under § 523(a)(2)(A) can be sustained.

In his complaint, Sager first argued that Lewis falsely represented the value of the assets he would bring to the partnership, thereby inducing Sager to invest $5,000 in partnership capital, and to loan the partnership an additional $9,000. Sager claimed that at the time the partnership was formed Lewis represented the value of equipment and inventory to be contributed by him to be $33,879.00. Sager contended that in fact the assets were only worth $9,645.00.

The evidence presented at the trial belied Sager's allegations. Sager testified that when he and Lewis met at Sager's home to form the partnership, Lewis stated that he possessed animals worth approximately $10,000, equipment worth $5,000, and that he had business debts of around $4,000. It was based upon these figures that Sager decided to invest $5,000 initially in the business. Although the evidence revealed that the value of the partnership's assets, as shown by a number of inventories, varied over time, this Court does not believe that any of Sager's subsequent advances to the business were predicated upon Lewis' representations as to value of assets.

Sager's amended complaint also asserted that Lewis obtained a total of $14,000 from Sager without intending to repay those sums or to allow Sager to share in the partnership's profits. The Court views this assertion as an allegation of actual fraud within the meaning of § 523(a)(2)(A). Sager produced no evidence, however which would lead the Court to conclude that Lewis possessed an intent to defraud either when the parties agreed to form a partnership or later when Sager advanced additional funds. Of course, the burden of proof rests upon the party challenging the dischargeability of a debt. *See In re Owens*, 54 B.R. 162 (Bankr.D.S.C.1984). Sager's claims under § 523(a)(2)(A) will be denied.

■ At trial, Sager placed greater emphasis upon § 523(a)(4) which provides:

A discharge under § 727 ... of this title ... does not discharge an individual debtor from any debt ... for *fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.*

11 U.S.C. § 523(a)(4) (emphasis added). Sager neither alleged, proved, nor argued any embezzlement or larceny, and as stated above the Court could not find the existence of the requisite intent to find fraud on the part of the Debtor. Sager does contend, however, that partners stand in a fiduciary relationship to one another, and that Lewis defalcated with the partnership's assets.

The Court cannot agree with the contention that partners are fiduciaries within the

meaning of § 523(a)(4). Although the Court recognizes that a partnership, although unwritten, existed between Sager and Lewis, and that the Virginia Partnership Act provides that partners are accountable to one another as fiduciaries, the Court is persuaded by the line of cases which holds that no fiduciary relationship exists between partners for purposes of determining the dischargeability of a debt in bankruptcy. *See* Va.Code Ann. § 50–1 et seq. (1950); *see* § 50–21 (partner accountable as a fiduciary).

The Court notes that the applicability of § 523(a)(4) is a federal question and is, therefore, not controlled by a state statute imposing a fiduciary relationship upon particular persons. The fact that Virginia has adopted the Uniform Partnership Act making a partner accountable to the partnership does not create a technical or express trust and does not require the Court to find this debtor to be a fiduciary for the purposes of this federal statutory provision. *See* Va.Code Ann. § 50–1 et seq. (1950), cited *supra.*

While under partnership law the relationship between partners may be a fiduciary relationship, courts interpreting the predecessor statutes to the present § 523(a)(4) did not give the term "fiduciary" the same broad meaning. Since the statutory provision making nondischargeable debts arising from the defalcation of a fiduciary first appeared in the Act of 1841, it has consistently been limited in its application to technical or express trusts as distinct from the defalcations of agents, bailees, brokers, factors, partners, and other persons similarly situated. *See* 3 Collier on Bankruptcy Paragraph 523.14[1][c] (15th ed. 1986). *See also, In re Tocci,* 34 B.R. 66, 9 C.B.C. 2d 636 (Bankr.S.D.Fla.1983); *Hurlbert v. Drake,* 5 B.R. 149 (Bankr.D.Idaho 1980). Courts held that partners were not "fiduciaries" within the meaning of these statutes. The courts construed the term "fiduciary" so narrowly because the term "defalcation," unlike fraud, was construed to include not only conduct involving bad faith or intentional wrongdoing but also the mere failure to account for funds entrusted to the fiduciary. *Central Hanover Bank*

*v. Herbst,* 93 F.2d 510 (2d Cir.1937); *In re Barwick,* 24 B.R. 703 (Bankr.E.D.Va.1982).

A recent opinion out of the Alexandria Division of this Court held that the existence of a partnership does not per se create a fiduciary relationship within the meaning of § 523(a)(4) of the Bankruptcy Code. *In re Taylor,* 58 B.R. 849 (Bankr.E.D.Va.1986) (Bostetter, J.). In *Taylor,* the court cited with favor the decision of the Bankruptcy Court for the Eastern District of Missouri in the case of *In re Holman.* 42 B.R. 848 (Bankr.E.D.Mo.1984). The court in *Holman* held that notwithstanding Missouri's adoption of the Uniform Partnership Act the relationship between partners is not a fiduciary relationship under § 523(a)(4). The *Holman* court reasoned that Congress did not intend the expansion of the term "fiduciary capacity" to include ordinary agency or partnership relationship when it adopted the Code. *Holman* at 850.

The *Holman* court also examined the old United States Supreme Court case of *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844). In that case, the Supreme Court first clarified the meaning of the term "fiduciary" as used in a bankruptcy statute similar to § 523(a)(4):

The second point is, whether a factor, who retains the money of his principal, is a fiduciary debtor within the act.

If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust imposed in the debtor. Such a construction would have left few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act.

The cases enumerated, "the defalcation of a public officer," "executor," "administrator," "guardian," or "trustee," are not cases of implied but special trusts, and the "other fiduciary capacity"

mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act.

*Chapman, supra* at 207.

This interpretation was later approved by the Supreme Court in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). In that case Justice Cardozo noted that the *Chapman* rule had been applied by the Court "in varied situations with unbroken continuity." *Davis, supra* at 333, 55 S.Ct. at 153.

The Court is aware that another bankruptcy court in this circuit has reached an opposite conclusion, holding that partners stand in a fiduciary relationship within the meaning of § 523(a)(4). *In re Owens*, 54 B.R. 162 (Bankr.D.S.C.1984). That court, however, relied upon the decision in *In re Kraus*, 37 B.R. 126 (Bankr.E.D.Mich.1984), which was distinguished in *Holman, supra.* The court in *Holman* pointed out that the *Kraus* case ignored the Supreme Court's decisions in *Chapman* and *Davis*, which are discussed above.

This Court is convinced that the term "fiduciary" as used in 11 U.S.C. § 523(a)(4) is limited to the class of fiduciaries including trustees of specific written declarations of trust, guardians, administrators, executors, or public officers and, absent special considerations, does not extend to the more general class of fiduciaries such as agents, bailees, brokers, factors, and partners. As such the alleged indebtedness at issue in this case is not a debt for defalcation while acting in a fiduciary capacity.

The complaint of Sager to determine the dischargeability of an indebtedness of Lewis will be denied on all grounds. An appropriate Order will issue.