In re Carl L. HILDEBRAND, Debtor.

McLean, Koehler, Sparks & Hammond, Plaintiff,

v.

Carl R. Hildebrand, Defendant.

Bankruptcy No. 97–2–1310–DK.
Adversary No. 98–1–A119–DK.

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

Jan. 21, 1999.

Terence B. Garvey, Gaithersburg, MD, for Debtor.

Gregory Paul Johnson, Silver Spring, MD, Trustee.

### *MEMORANDUM OF DECISION*

DUNCAN W. KEIR, Bankruptcy Judge.

In this adversary proceeding, Plaintiff seeks a determination that the judgment debt owed to Plaintiff by the Debtor/Defendant is nondischargeable. Plaintiff asserts that it is entitled to Summary Judgment on Count I of the Complaint, which asserts that the indebtedness of Defendant to the Plaintiff is nondischargeable under 11 U.S.C.

§ 523(a)(4) by reason of defalcation. The Plaintiff does not seek Summary Judgment as to Count II asserting nondischargeability under 11 U.S.C. § 523(a)(6), except as to the measure of damages. The Defendant moves for Summary Judgment on both counts.

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 883–84, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Sylvia Dev. Corp. v. Calvert County, Maryland,* 48 F.3d 810, 817 (4th Cir.1995). In considering a motion for summary judgment the court must view all permissible inferences in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tuck v. Henkel Corp.,* 973 F.2d 371, 374 (4th Cir.1992), *cert. denied,* 507 U.S. 918, 113 S.Ct. 1276, 122 L.Ed.2d 671 (1993). Summary judgment is appropriate only if, taking the record as a whole, a reasonable jury could not possibly return a verdict in favor of the non-moving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

There is no dispute that Carl R. Hildebrand, CPA, P.A. (hereinafter "P.A.") became a partner of the Plaintiff accounting firm in 1990 and in conjunction therewith executed an amendment to the Plaintiff's Partnership Agreement which bound the P.A. to all of the provisions of the 1985 Partnership Agreement ("Partnership Agreement") of the Plaintiff firm. The Defendant, individually, was the sole shareholder, director and officer of P.A. and all actions by the P.A. were done by and directed by the Defendant.

Section 8.5 of the Partnership Agreement ("Section 8.5") provides:

It is expressly understood that all clients are herewith considered proprietary to the firm. As a result, in the event of withdrawal or expulsion of a partner any loss of a client to that particular partner (or new firm or associate of the partner) within a 2 year period shall be deemed a purchase of the account by the aforementioned. The purchase price for the lost client account shall be set at 100% of the normal recurring fees billed during the last twelve months of service and payment shall be made pro ratably over a 36 month period.

In 1992, the corporate charter of the P.A. lapsed and in 1995 the Defendant severed his relationship with the Plaintiff firm. Defendant failed to pay compensation to the Plaintiff in accordance with Section 8.5. The P.A. was revived in 1997 at a time when the Plaintiff was asserting damages against the Defendant in the Circuit Court for Baltimore City, arising out of Defendant's withdrawal from the partnership. On May 9, 1997, an arbitration award was granted in favor of the Plaintiff and against the Defendant and the P.A. jointly and severally, for that amount calculated under Section 8.5, which award was reduced to a judgment by the Circuit Court for Baltimore City.

The Plaintiff argues that by virtue of the P.A. becoming a partner of the firm of the Plaintiff, the 100% ownership, directorship and officership of the P.A. by the Defendant, and the lapse of the corporate charter of the P.A., Defendant was individually subjected to a fiduciary duty as a partner of the Plaintiff arising from an expressed trust under the Partnership Agreement and state law. The Plaintiff further avers that while a fiduciary, Defendant wrongfully deprived the Plaintiff of partnership property by corresponding to Plaintiff's clients and by providing services to some of those clients, even though these acts occurred after Defendant or P.A., or both, departed from Plaintiff. The Plaintiff asserts that Defendant is liable for defalcation by these actions, as that term is defined under state law, and such defalcation meets the requirements of nondischargeability, under 11 U.S.C. § 523(a)(4).

The uncontradicted evidence[1] is that Defendant sent a notice to the Plaintiff of his withdrawal from the partnership by a letter dated May 17, 1995. Further, the Defendant testified at deposition[2] that he had no recall of notifying a client of the Plaintiff firm prior to the time that he gave notice of his departure.[3]

After he gave Plaintiff notice, Defendant did contact clients of the Plaintiff. Defendant's deposition testimony was that he only recalled contacting clients for whom he knew he would not be continuing to provide services to let them know he was leaving. Further, he may have disclosed his imminent departure to clients who called him for work.[4] The Defendant testified that prior to his departure he did not contact any client with a request that the client continue to work with Defendant after he had departed from the firm.[5] After his departure from the firm, the Defendant sent a letter indicating that he had departed from the Plaintiff firm and invited clients which had been serviced by the Defendant at the Plaintiff firm to engage the Defendant if they wished for him to keep doing work for them.[6]

The Plaintiff asserts that by performing work for Plaintiff's former clients after Defendant's departure, while failing to compensate the Plaintiff in accordance with Section 8.5, Defendant used client information which Plaintiff asserts was the property of the Plaintiff, for Defendant's own benefit. It is asserted that this use of client information was a breach of the fiduciary duty that Plaintiff asserts Defendant owed to Plaintiff by virtue of the partnership arrangement by and between the P.A. and Plaintiff. Plaintiff contends that the fiduciary duty of Defendant was a continuing obligation not to use such information after departing from the partnership, citing *Roy v. Gravel*, 143 B.R. 825 (W.D.La.1992). Finally, as to damages, Plaintiff asserts collateral estoppel based upon the judgment entered in the Circuit Court for Baltimore City.

Defendant in his Motion for Summary Judgment asserts that the Defendant individually was not a partner of the Plaintiff and thus individually was not subjected to any duty imposed upon such a partner. Defendant avers that the revival of the P.A. in 1997 reverted back by state law to its inception and thus acts done in 1995 on behalf of the P.A. are not ascribable to the individual Defendant. Defendant asserts that his actions were not wrongful to the extent necessary to constitute a necessary element of defalcation as that term is applied under 11 U.S.C. § 523(a)(4) and that the state court judgment is not collateral estoppel as to the extent or amount of liability for defalcation. Finally, Defendant asserts that he is entitled to summary judgment on the action under 11 U.S.C. § 523(a)(6) because the Plaintiff has failed to aver facts that, even if totally accepted by a jury, could constitute a cause of action for willful and malicious injury.

Plaintiff argues that a partner owes a fiduciary duty to a partnership under an expressed trust, the breach of which duty may form the basis for defalcation or misappropriation under 11 U.S.C. § 523(a)(4). Under Maryland law, the duty of a partner is set forth in § 9–404 of the Corporations and Associations Article of the Maryland Annotated Code.[7] At the time of the events in question, that section read as follows:

§ 9–404 Partner accountable as a fiduciary.

(a) Accounting required.—Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction

**1.** *See* Plaintiff's Motion for Summary Judgment, Exhibit C (May 17, 1995 Letter from Carl R. Hildebrand to "Partners").

**2.** Plaintiff's Motion for Summary Judgment, Exhibit D, at p. 37 (labeled September 14, 1998 deposition of Carl R. Hildebrand).

**3.** *Id.* at 37.

**4.** *Id.* at 37–38.

**5.** *Id.*

**6.** *Id.* at 41.

**7.** Md. Code Ann. Corps. & Ass'ns § 9–404 was amended in 1997. For purposes of this opinion, all references to § 9–404 are to the statute as it existed prior to the 1997 amendment.

connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

(b) Applicability to estates of deceased partners.—This section applies also to the representatives of a deceased partner engaged in the liquidation of the affairs of the partnership as the personal representatives of the last surviving partner.

■ The Court of Appeals of Maryland has interpreted the duty imposed by that statute.

The partnership relationship is of a fiduciary character which carries with it the requirement of utmost good faith and loyalty and the obligation of each member of the partnership to make full disclosure of all known information that is significant and material to the affairs or property of the partnership.

*Herring v. Offutt,* 266 Md. 593, 597, 295 A.2d 876, 879 (1972) (citations omitted).

■ While Maryland law, as it previously existed, indicates that partners were fiduciaries of the partnership, not all trust duties under state law are sufficient to create the necessary fiduciary relationship under the federal standard required for application of the defalcation provision of 11 U.S.C. § 523(a)(4). *See Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Stanley Silverblatt Electrical Contractor, Inc. v. Marino (In re Marino),* 115 B.R. 863 (Bankr.D.Md.1990); *CRL of Maryland v. Holmes (In re Holmes),* 117 B.R. 848 (Bankr.D.Md.1990).

In *Marino,* Judge E. Stephen Derby, of this court, first found that a trust under 11 U.S.C. § 523(a)(4) "must be a technical trust in existence at the time of the defalcation." *Marino,* 115 B.R. at 868. The court explained, "[t]he fiduciary relationship must exist prior to, or independent of, the transaction from which the contested debt arose." *Id.* In *Holmes,* Judge James F. Schneider agreed that for application of 11 U.S.C. § 523(a)(4), the debtor must have been acting as trustee of an express or technical trust. The court in *Holmes* diverged from the holding of the court in *Marino,* as to a trust created by statute.

In other jurisdictions, courts have reached divergent results on the question of whether a partner's duty to a partnership creates a trust duty as required to involve the application of 11 U.S.C. § 523(a)(4). In *LSP Inv. Partnership v. Bennett (In Matter of Bennett),* 989 F.2d 779 (5th Cir.1993), the court commented:

A number of courts have addressed the issue of whether a partner generally owes the type of fiduciary duty contemplated by section 523(a)(4) to his co-partners. The courts are split on this issue with approximately half finding that such a fiduciary duty is owed,[6] and the other half finding that it is not.[7]

6  *See, e.g., Lewis v. Short (In re Short),* 818 F.2d 693, 695–96 (9th Cir.1987)(Washington law); *Ragsdale v. Haller,* 780 F.2d 794, 796 (9th Cir.1986)(California law); *Longo v. McLaren (In re McLaren),* 136 B.R. 705, 714 (Bankr.N.D.Ohio 1992); *Gravel v. Chris J. Roy, A Law Corp. (In re Roy),* 130 B.R. 214 (Bankr.W.D.La.1991); *Beebe v. Schwenn (In re Schwenn),* 126 B.R. 351 (D.Colo.1991); *Getaz v. Stewart (In re Stewart),* 123 B.R. 817 (Bankr. W.D.Tenn.1991); *Braun v. McKay (In re McKay),* 110 B.R. 764 (Bankr.W.D.Pa. 1990); *Susi v. Mailath (In re Mailath),* 108 B.R. 290, 293–94 (Bankr.N.D.Okla. 1989); *In re Guy,* 101 B.R. 961, 986–91 (Bankr.N.D.Ind.1988); *In re Cramer,* 93 B.R. 764, 767–68 (Bankr.M.D.Fla.1988); *Lee v. Crosswhite (In re Crosswhite),* 91 B.R. 156 (Bankr.M.D.Fla.1988); *Stone v. Stone (In re Stone),* 90 B.R. 71, 79–80 (Bankr.S.D.N.Y.), aff'd, 94 B.R. 298, 302–03 (S.D.N.Y.1988), aff'd, 880 F.2d 1318 (2nd Cir.1989); *In re Dino,* 82 B.R. 184, 186 (Bankr.D.R.I.1988); *In re Owens,* 54 B.R. 162, 164–65 (Bankr.D.S.C.1984); *In re Kraus,* 37 B.R. 126, 129 (Bankr. E.D.Mich.1984). *See also In re Weiner,* 95 B.R. 204, 206–07 (Bankr.D.Kan.1989) (although no fiduciary relationship between partners generally, the sole managing partner had responsibilities commonly associated with trustee and was therefore a fiduciary under > section 523(a)(4)); *In re Hurbace,* 61 B.R. 563, 565–66 (Bankr. W.D.Tex.1986) (holding that there was in-

sufficient fiduciary relationship between equal copartners to meet requirements of section 523(a)(4), but indicating, in dicta, that managing partner's fiduciary duties probably sufficient).

7 *Rolley v. Spector (In re Spector)*, 133 B.R. 733 (Bankr.E.D.Pa.1991); *Blashke v. Standard (In re Standard)*, 123 B.R. 444 (Bankr.N.D.Ga.1991); *Sulphur Partnership v. Piscioneri (In re Piscioneri)*, 108 B.R. 595 (Bankr.N.D.Ohio 1989); *Stahl v. Lang (In re Lang)*, 108 B.R. 586 (Bankr. N.D.Ohio 1989); *Coleman v. Choisnard (In re Choisnard)*, 98 B.R. 37 (Bankr. N.D.Okl.1989); *Medved v. Novak, (In re Novak)*, 97 B.R. 47 (Bankr.D.Kan.1987); *In re Lewis*, 94 B.R. 406, 410 (Bankr. E.D.Va.1988); *In re Stone*, 91 B.R. 589, 594 (D.Utah 1988); *Dreyfoos v. Ryan (In re Ryan)*, 90 B.R. 554 (Bankr.S.D.Fla. 1988); *In re Braudis*, 86 B.R. 1001, 1004 (Bankr.W.D.Mo.1988); *In re Clemens*, 83 B.R. 945, 951 (Bankr.N.D.Ohio 1988); *In re Napoli*, 82 B.R. 378, 382–83 (Bankr. E.D.Pa.1988); *In re Elliott*, 66 B.R. 466, 467 (Bankr.S.D.Fla.1986); *In re Holman*, 42 B.R. 848, 850–51 (Bankr.E.D.Mo.1984). *Id.* at 783–84.

In the case of *Sager v. Lewis (In re Lewis)*, 94 B.R. 406 (Bankr.E.D.Va.1988), the court opined that fiduciaries, for purposes of 11 U.S.C. § 523(a)(4), did not extend to partners. On the other hand, the court in *Zohlman v. Zoldan (In re Zoldan)*, 221 B.R. 79, 87 (Bankr.S.D.N.Y.1998), reached the opposite conclusion.

■ This court is persuaded that the Maryland law applicable to this case, as set forth in MD. CODE ANN. CORPS. & ASS'NS § 9–404, and as explicated in *Herring v. Offutt*, *supra*, creates a trust duty upon a partner that is expressed and arises before any wrongful act. This court agrees with and adopts the test discussed in *Marino*. To the extent that the court in *Holmes* found that any trust created by statute cannot qualify as a technical trust for purposes of 11 U.S.C. § 523(a)(4), this court must respectfully disagree. In the instant · case, the court concludes that the duty of accountability enunciated in the applicable version of the Maryland Code is a fiduciary duty for purposes of the application of 11 U.S.C. § 523(a)(4).

■ In this case, the partner upon whom was imposed the duty, was not the Defendant, but the P.A. Generally, the fiduciary duty imposed upon a corporate entity will not support a finding of nondischargeability as to an officer of the entity, even where applicable law may impose liability (but not fiduciary duty) upon that individual. *See Marino*, 115 B.R. at 872.

■ However, as this court noted in *Wilcoxon Construction, Inc. v. Woodall (In re Woodall)*, 177 B.R. 517 (Bankr.D.Md. 1995):

[U]nder general principles of corporate law, corporate officers are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body. *See generally, In re Pontier*, 165 B.R. 797 (Bankr.D.Md.1994) (citing *Tedrow v. Deskin*, 265 Md. 546, 290 A.2d 799 (1972) (citations omitted)). Further, "an officer who causes a corporate trustee to commit a breach of trust causing loss to the trust administered by the corporation is personally liable to the beneficiaries for the loss." *In re Baird*, 114 B.R. 198, 204 (9th Cir. BAP 1990) (citing *E.g. Seven G Ranching Co. v. Stewart Title & Trust*, 128 Ariz. 590, 593, 627 P.2d 1088, 1091 (App. 1981)). "A corporation acts only through its officers or employees. When a corporation as an entity is placed in a fiduciary capacity it is the corporate officer who is charged with living up to the terms of the agency. If the fiduciary relationship is not imposed upon the corporate officer charged with maintaining the fiduciary relationship, then § 523(a)(4) could be rendered meaningless in cases where the fiduciary relationship is established between a creditor and a corporate fiduciary only. All the debtor would have to do to avoid § 523(a)(4) is place the corporation in the position of the fiduciary rather than himself." *Id.*, 114 B.R. at 205 (quoting *In re Koszuth*, 43 B.R. 104, 107 (Bankr.M.D.Fla. 1984). A complaint averring all facts necessary to impose this fiduciary liability

may support a finding of non-discharge-ability pursuant to § 523(a)(4).

*Woodall,* 177 B.R. at 522 n. 2.

■ Where all acts done on behalf of the P.A. were done by the Defendant, if it be found that the Defendant caused the P.A. to act in a manner that would constitute defalcation, Defendant individually may be responsible for that breach of fiduciary duty.

■ However in this case, the actions of the Defendant *as alleged by the Plaintiff,* do not rise to a breach of the fiduciary duty imposed by MD. CODE ANN. CORPS. & ASS'NS § 9–404. The statute requires a partner to account to the partnership for any benefit and hold as trustee for the partnership any profit derived by the partner from any use by him of the partnership's property.

Plaintiff alleges that the Defendant used property of the Plaintiff partnership by contacting clients for whom services had been rendered by the partnership (Plaintiff). The undisputed facts are that the only contact initiated by the Defendant in which clients were invited to use Defendant for future accounting services, occurred after the P.A. (and Defendant) had departed the Plaintiff and at a time when the P.A. was no longer a partner. Plaintiff urges that Defendant had a continuing duty arising from the language of Section 8.5, in which it is stated:

> It is expressly understood that all clients are herewith considered proprietary to the firm. As a result, in the event of withdrawal or expulsion of a partner any loss of a client to that particular partner (or new firm or associate of the partner) within a 2 year period shall be deemed a purchase of the account by the aforementioned.

This provision first attempts to ascribe ownership of a client to the Plaintiff firm. However, clients who wish to discontinue receiving services from a particular firm are not required to remain with that firm and thus, cannot be "owned." Moreover, in the Partnership Agreement the parties agreed that the "loss of a client" (presumably meaning work done by the departing partner or successor firm of the departing partner) is a purchase (not a defalcation) of the "ac-count." The contract further provides for a pricing mechanism for such purchase. Thus, the very provision that the Plaintiff points to in attempting to characterize the post-departure activities of the Defendant as constituting a defalcation, sets forth that such activities gave rise to a contractual purchase obligation.

In the Partnership Agreement, the parties did not create an expressed trust that required that funds received by a departed partner for post-departure services rendered to former firm clients must be held in an expressed trust. Although the evidence supports a breach by the Defendant of a duty created by an expressed provision in the Partnership Agreement, that duty was one of a contract purchase, the violation of which gave rise to a simple debt for breach of contract, as opposed to defalcation by a fiduciary. Thus, the uncontradicted evidence does not demonstrate any breach by the Defendant of a statutory fiduciary duty imposed by law or imposed by private agreement. If, while a partner at the firm, Defendant had acted in derogation of his utmost duty of loyalty to the partnership, damages resulting from the derogation might well have been nondischargeable defalcation or misappropriation. But facts to support such a finding have neither been alleged, nor demonstrated by any evidence under FED. R. BANKR. P. 7056.

This finding is not inconsistent with the state court judgment. No specific ground for the imposition of liability by the arbitrator and the subsequent adoption of such arbitration award as a judgment by the Circuit Court for Baltimore City is set forth. However, the contractual obligation to pay a calculated sum created a contract duty which was not performed. The damages awarded by the Circuit Court were as measured by a liquidated damage provision in the contract. While the result is consistent with a breach of contract obligation, there is no showing that those damages were imposed or calculated as damages resulting from torts.

■ Defendant seeks a judgment by this court that he owes no debt to Plaintiff. Defendant is precluded from relitigating the

existence of his indebtedness to Plaintiff. Collateral estoppel binds the successor court to those findings of fact that were actually litigated and were necessary to the judgment entered. WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: Jurisdiction § 4402 (1981). Defendant alleges that he had an agreement with the firm at the time of his departure which superseded Section 8.5 and that therefore he did not breach the contract (the "Defense"). By entering judgment against the Defendant, the state court necessarily determined that the Defense was without merit.

But, the finding of contractual liability did not require, nor is there any evidence of an actual determination by the State Court of issues concerning defalcation, or a malicious and willful tort. The state court judgment therefore establishes by collateral estoppel the basis for an allowed unsecured claim in the bankruptcy, but does not establish any element of the nondischargeability of such claim.

■ As to the assertion of nondischargeability under 11 U.S.C. § 523(a)(6), there are no facts averred upon which a jury could conclude that the post-departure activities of the Defendant constituted a tortuous deprivation of property that was willful and malicious. Under 11 U.S.C. § 523(a)(6), "nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). The facts asserted by plaintiff and the uncontradicted evidence do not provide a *prima facie* basis upon which the trier of fact could conclude malicious and willful injury.

■ "Because of the very nature and philosophy underlying the bankruptcy law the exceptions to dischargeability are to be construed strictly." *In re Zoldan*, 221 B.R. at 83 (quoting *Household Finance Corp. v. Danns*, 558 F.2d 114, 116 (2d Cir.1977).

"In order to prevail on a motion for summary judgment, the moving party must establish the absence of genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party carries its burden, the nonmoving party may not rest on the allegations in his or her pleading, but must produce sufficient evidence that demonstrates that a genuine issue exists for trial. *Id.* at 324, 106 S.Ct. 2548." *Young v. Federal Deposit Ins. Corp.*, 103 F.3d 1180, 1186 (4th Cir.1997). In the instant case, the undisputed allegations of fact and the uncontradicted evidence under FED.R.CIV.P. 56, incorporated by FED. R. BANKR.P. 7056, do not support the causes asserted by the Plaintiff (even when viewed in a light most favorable to the Plaintiff). Accordingly, summary judgment must be granted to the Defendant. An Order granting summary judgment to the Defendant upon all counts of the complaint shall be entered.